[Crim. No. 2349.   First Dist., Div. One.   Sept. 6, 1945.]

THE PEOPLE, Respondent, v. FRANK C. GREGORIS, Defendant.

Raymond A. Ferrario for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener and Miriam E. Wolff, Deputies Attorney General, for Respondent.

KNIGHT, J.—The defendant was accused of violating section 11530 of the Health and Safety Code, which declares that "No person shall knowingly plant, cultivate, cut, harvest, dry, or process any loco weed or cannabis sativa [marihuana] or any part thereof." He was accused also of having been

previously convicted of burglary, in Alameda County, and of having served a sentence therefor in the state prison at San Quentin. He was represented by counsel, pleaded not guilty to the main charge, and stood mute as to the prior conviction; whereupon the court directed that a denial thereof be entered in his behalf. A trial by jury was waived, and after hearing the evidence the trial court found the defendant guilty of the offense charged and that the allegations relating to the prior conviction were true. Motions for probation and a new trial were heard and denied, and defendant was sentenced to imprisonment in the state prison for the term prescribed by law; whereupon he took this appeal.

The only question presented by the appeal is whether the evidence is legally sufficient to sustain the conviction; and after an examination of the record it is our opinion that it is. Among the facts and circumstances disclosed thereby are the following:

Defendant was employed as a brewery truck driver in Oakland, and lived with his wife and two children on Twenty-second Street in that city. He had occupied the premises for about five years. The back yard was enclosed with a five-foot board fence and most of the yard was devoted to the raising of vegetables. On the day of defendant's arrest, in response to a telephone message, two police officers and a state narcotic inspector drove to the premises, and looking over the fence they saw a number of marihuana plants growing among the tomato vines. Thereupon they entered the yard to examine the plants and found eleven of them. The plants were well matured and it was evident from the manner in which they were set in the soil, the size of the plants and the condition of the soil around them that they were not volunteer plants, but on the contrary had been purposely planted some months before and thereafter carefully cultivated. Ten of them were set in even rows, equal distances apart, between the tomato vines; there were no weeds growing around the marihuana plants, and the soil was damp and well cultivated. In fact, some of the plants were supported by stakes driven in the ground. One of the officers testified that when he first arrived at the premises and as he looked over the fence he saw the defendant standing on the back stairs; that he called to the defendant but he ran away.

The circumstances which brought about the discovery of

the marihuana plants and the arrest of the defendant are shown by the testimony given by defendant's wife and a friend of the defendant's named Heffley, both of whom were called as witnesses for the defense. Briefly, the circumstances were these: About nine o'clock on the morning of the day defendant was arrested, Heffley called at defendant's home to get a radio tube. Defendant was not home at the time, and before leaving Heffley went out into the back yard to examine defendant's "police" dog, which had been afflicted with an infected foot. As he walked through the yard he observed the marihuana plants growing among the tomato vines, and he called Mrs. Gregoris' attention to the plants. He told her what they were and that she should get rid of them at once. He testified that she thought he "was kidding or lying"; that she asked him what she should do about it and he replied: "You had better call the police and have somebody take care of it right away, because it's awful big." He then left the premises, saying he would be back later that afternoon. The pertinent portions of Mrs. Gregoris' testimony are as follows: ". . . he [Heffley] went in the back to look at the dog's foot because it had been sore, it had been very badly infected, and he walked in the back to call the dog back there and he seen those plants and he drawed my attention to it, he said, 'These are marihuana plants,' and he asked me if I knew anything about it. I said no, in fact I didn't believe him, I thought he was kidding, and he said definitely he knew it was because he had seen them before"; that he then said to her, ". . . by all means as soon as Frank gets home you have got to have him get rid of those plants; if they are found on the property it's just too bad, it's a serious offense." Continuing, she testified that before Heffley left he told her again to be sure her husband "got rid of them, that they should be reported to the police or pulled up immediately and destroyed"; that he thought it best to leave them until her husband got home. Mrs. Gregoris then went on to say that before her husband went to work that morning they had engaged in a quarrel, during which he struck her; that because of his treatment of her she did not "care what happened to him"; that soon after Heffley left she cut some leaves off the plants and placed them in a pan near by "to make it look" as if her husband "was going to smoke it"; and after having done so she telephoned to the police, giving her home address and saying that her "hus-

band had marihuana in the back yard''; that she then left the premises and went to her brother's house, and started drinking.

On direct examination Mrs. Gregoris testified that so far as she knew her husband had never smoked marihuana; but on cross-examination she admitted having told the police on two occasions that he did; that she made such statement first on the night he was arrested and again the next morning; but she explained that the first statement was made by her after she had drunk considerable liquor, and that the next morning she was still angry with him and that she ''thought, 'I am not going to change the story'. . . .''

So far as the record shows, the defendant was not at any time asked whether he was a user of marihuana; but at the trial, while testifying in his own behalf, he denied knowing anything about the marihuana plants. He admitted having worked in the vegetable garden, but claimed that he had never seen any of these plants growing in the yard. In this connection he went on to say that about all he did was the digging to prepare the ground for the planting; that his wife did the planting; that occasionally he watered the garden, and that his boy, eleven years old, weeded the garden. But in contradiction of his testimony, four of his neighbors testified that they had seen him working in the garden very often; that on a number of occasions, during the preceding several weeks, they had seen him digging and cultivating around the tomato vines. And as to the truth of the defendant's statement that he had never seen the plants growing in his back yard, his wife testified, in response to questions asked by the court, that anyone working around the tomatoes would see the marihuana plants ''unless he was blind.''

The foregoing facts and circumstances are legally sufficient, in our opinion, to support the conclusions which the trial court evidently drew therefrom, that defendant had planted and afterwards cultivated the marihuana plants, knowing the kind of plants they were; and that therefore he was guilty of violating the provisions of the statute hereinabove quoted.

As to the evidence of flight, defendant testified that in driving home that night he was accompanied by a friend; that as he approached his house he saw the police officers there and that believing his wife had complained to the au-

thorities about the trouble that had taken place between them that morning and that he was about to be arrested, he drove on without stopping; that later that evening he called at his mother's home and she "explained all about it" to him; that thereupon he started to drive down to the City Hall to ascertain "what they wanted"; but that on the way there he was picked up by the police. It is well settled, however, that the flight of a person after the commission of a crime is a circumstance which may be considered along with all others as tending in some degree to show a consciousness of guilt (*People* v. *Santora,* 51 Cal.App.2d 707 [125 P.2d 606]). Therefore, in the present case the question as to why the defendant fled after seeing the police at his home was one for the trial court to determine from all the facts and circumstances before it.

Defendant argues that if he had been growing the marihuana knowingly it is not "reasonable to suppose that he would have done so in such open fashion," among tomato vines which were visible to all the neighbors. In answer to this argument, respondent states that no better place to conceal the plants and to divert suspicion could scarcely be found than in a vegetable garden among tomato vines which were then from two and a half to three feet high. Evidently this was the view taken by the trial court, and since the argument advanced by defendant involves a question of pure fact the trial court's conclusion thereon is binding on appeal.

It is also argued that Heffley must have believed defendant innocent of any wrongdoing, otherwise he would not have suggested to Mrs. Gregoris that she notify the police. Conceding that to be true, the trial court, after considering all the facts and circumstances before it, decided to the contrary, and since its decision is not wanting in evidentiary support it is controlling on appeal, regardless of the belief entertained by Heffley.

Finally, it may be stated that a review of the entire record shows that the defendant was given a fair and impartial trial, and that because of the seriousness of the charge the trial judge was at all times watchful of the defendant's rights. Before proceeding with the trial he clearly pointed out to the defendant the procedure that would be followed by waiving a jury trial; and it is evident from the fairness of the trial judge's rulings on the admissibility of evidence that if after

having decided the cause on the merits he had entertained any reasonable doubt as to the defendant's guilt he would have granted a new trial. Therefore, since the evidence is legally sufficient to sustain the finding as to guilt, the judgment of conviction and the order denying the motion for a new trial should be affirmed, and it is so ordered.

Peters, P. J., and Ward, J., concurred.