[Crim. No. 2521.  First Dist., Div. One.   Oct. 27, 1948.]

THE PEOPLE, Respondent, v. FRANK GRYSZKIEWICZ, Appellant.

Ernest Spagnoli for Appellant.

Fred N. Howser, Attorney General; David K. Lener, Deputy Attorney General; Edmund G. Brown, District Attorney, and Alvin Weinberger, Assistant District Attorney, for Respondent.

PETERS, P. J.—By count one of an information defendant was charged with attempted grand theft in that on October 13, 1947, he attempted to steal the wallet of Betty Chapman, containing $20, and in count two he was charged with grand theft in that on October 14, 1947, he stole the wallet of Lydia Rossi which contained $275. He was also charged with, and admitted, convictions and service of terms on two prior felonies. He was found guilty of both offenses by a jury, and from the judgments of conviction, prosecutes this appeal.

The evidence on both counts is sufficient to sustain the convictions, and defendant makes no serious contention to the contrary. In regard to the attempted grand theft charge, Betty Chapman testified that on October 13, 1947, at about 12:30 p. m. she was walking northerly on Grant Avenue toward Maiden Lane in San Francisco; that she felt her purse bump against her side; that she looked down and saw that her purse was open and that a man's hand, reaching from behind her, was in the purse; that she closed her purse and turned around to face the man who was just behind her. She positively identified that person as the defendant. Both Miss Chapman and Jack Foster, a doorman in a near-by store, testified that Miss Chapman asked the man whose hand had been in her purse, what he thought he was doing; that defendant answered "how dare you accuse me of anything?"; that Foster advised Miss Chapman to call a policeman; that Foster then whistled for a policeman, whereupon defendant ran down Maiden Lane and disappeared. Miss Chapman reported the facts to the police and described the man involved as being 5 feet 5 or 7 inches tall, between 30 and 35 years of age, wearing glasses, no hat and a dark suit.

The evidence on the grand theft charge was as follows: Mrs. Rossi testified that on October 14, 1947, about 4:10 p. m. she was standing near the Flood Building on Market Street in San Francisco; that she was severely jolted by someone bumping into her; that she noticed that her purse, which she was carrying by a strap over her arm, was open and that a wallet containing $275 was missing; that she immediately looked around and saw the defendant, the only person near her, rapidly moving away; that she could see his face, and she positively identified that person as the defendant; that the man was about 5 feet 5 or 7 inches tall, wore a dark suit, glasses and no hat; that she saw him only an instant before he disappeared into the crowd; that the following day

the wallet, minus the $275, was returned to her by the post office.

Inspector Iredale, for 18 years on the pickpocket detail of the police department, testified that on October 16, 1947, he noticed the defendant in a safety zone on Market Street opposite Roos Bros.; that defendant looked at him, then jumped on a westbound streetcar, rode one block and got off at the front end; that Iredale boarded the same car, and got off at the rear end; that he walked up to defendant and asked him what he was doing there; that he then walked him down to Stockton and Market Streets where another police inspector was waiting, and they arrested defendant. Both complaining witnesses separately identified defendant in a police lineup.

Defendant, who did not take the stand, produced two witnesses to establish an alibi, i. e., that he was in Oakland working on the 13th and 14th of October, and, therefore, could not have been in San Francisco. Mr. Gilmore testified that in October of 1947 he operated two separate establishments; that one was a bar and one a fountain; that defendant worked for him from the early part of October up through October 14th doing odd jobs; that defendant normally worked at the bar from noon until 4 p. m., and then went and assisted at the fountain; that he was quite positive that defendant worked on the 13th and 14th; that his time book, which he produced, showed a payment of $36 to defendant on October 17th, on which date the defendant was in jail; that he paid defendant at the rate of $9 a day; that he may have made other payments to defendant during October, but that there was no entry showing them. Mrs. Hoopes managed the fountain between the hours of 4 to 11 p. m. She testified that on the 13th and 14th defendant came to work at the fountain at 4 p. m. She had told Inspector Iredale that defendant sometimes had not come to work until 6 p. m.

At the trial it appeared that defendant was 5 feet 1 inch tall. ■ As already pointed out, defendant does not directly attack the sufficiency of the evidence, but he does contend that the trial court committed prejudical error in that it denied his motion, made before the jury was impanelled, for separate trials on each count. Section 954 of the Penal Code provides in part that an information "may charge two or more different offenses . . . of the same class of crimes or offenses under separate counts, and if two or more indictments or informations are filed in such cases the court may

order them to be consolidated . . .; provided, that the court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately . . .'' Defendant concedes that the two charged offenses were of the same class, and that, under the above quoted code section, it was discretionary with the trial court whether the two counts should be tried separately, but he contends that it was an abuse of discretion to deny his motion. His theory is that the trial court knew, as a result of the preliminary examination of defendant, which was introduced as part of the motion, that the proof of identification on the grand theft charge would be much weaker than it would be on the attempted grand theft charge. It is urged that the defendant would have had a much better chance of being acquitted on the grand theft charge if it had not been tried with the attempted grand theft charge. To have denied the motion for a severance, under such circumstances, according to defendant, amounted to an abuse of discretion. The precise point was decided adversely to defendant in *People* v. *Kelly,* 203 Cal. 128 [263 P. 226], in which case the constitutionality of section 954 of the Penal Code in conferring discretion on the trial court was upheld. (See, also, *People* v. *Eudy,* 12 Cal.2d 41 [82 P.2d 359].) The fact that the two crimes charged were committed on separate days does not require that they be tried separately. (*People* v. *Northcott,* 209 Cal. 639 [289 P. 634, 70 A.L.R. 806]; *People* v. *Feigelman,* 65 Cal.App. 319 [223 P. 579]; *People* v. *Hanna,* 100 Cal.App. 509 [280 P. 379]; *People* v. *Thorn,* 138 Cal.App. 714 [33 P.2d 5].) Moreover, just what defendant would have gained by a severance, had one been granted, does not appear. Had the grand theft charge been tried alone, evidence of the attempted grand theft by defendant the day before and only a few blocks away from where the theft occurred, and where the evidence would have shown that both crimes were committed in the same manner, would have been admissible to show common plan, scheme or design. (*People* v. *Duane,* 21 Cal.2d 71 [130 P.2d 123]; *People* v. *Mayen,* 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383]; *People* v. *McClain,* 55 Cal.App.2d 399 [130 P.2d 978].)

It is next urged that the trial court erred in denying a motion by defendant to set aside the information on the ground that defendant did not have a full and fair preliminary examination. This contention is based upon the fact that at the preliminary examination Betty Chapman testified that after

defendant's arrest she visited the jail and identified him in a police lineup. The defendant's counsel then cross-examined her at some length and then attempted to cross-examine her as to whether an accusatory statement had been made by her and whether defendant had then denied it. The court limited this cross-examination on the ground that the prosecution had not brought out this point on direct examination, and because the question had been asked and answered several times. An examination of the preliminary examination demonstrates that defendant was given a full and fair opportunity to ask the complaining witnesses all proper questions, and that in no instance was the defendant improperly curtailed in his examination.

Defendant also seems to contend that the committing magistrate cut the hearing short without giving him an opportunity to produce witnesses. The record shows that the hearing was held on October 24, 1947. It was continued to October 25, 1947, to permit defendant to produce two witnesses. Defendant's counsel failed to appear on that day, and the hearing was again continued, this time until October 27th. Again defense counsel failed to appear and the judge was compelled to appoint a deputy public defender for defendant. Under such circumstances defendant is in no position to urge that he was unduly restricted in presenting evidence at the preliminary hearing.

The contention that certain of the testimony of Inspector Iredale was inadmissible is also without merit. Iredale testified that he saw defendant standing in a specified safety zone on October 16th; that the defendant looked at him and jumped on the back of a westbound streetcar; that he, the inspector, got on the same car; that defendant rode one block and got off at the front end of the streetcar; that he, the inspector, also alighted and asked the defendant what he was doing; that the defendant said: "Mr. Iredale, can I talk to you?"; that he then walked defendant down to another inspector, and the arrest was made. Defendant urges that this testimony was elicited for the sole purpose of showing that defendant knew Iredale. The evidence was clearly admissible as tending to show flight. Any conduct of a defendant subsequent to the commission of the crime tending to show consciousness of guilt is relevant and admissible, and flight is a circumstance to be considered by the jury in determining if there is a consciousness of guilt. (See cases collected 8 Cal. Jur. § 158, p. 44; *People* v. *Santora*, 51 Cal.App.2d 707 [125

P.2d 606] ; *People* v. *Gregoris,* 70 Cal.App.2d 716 [161 P.2d 568] ; *People* v. *Hall,* 199 Cal. 451 [249 P. 859].)

▉ Objection is also made to the giving of certain instructions. Thus, complaint is made that the court gave an instruction on the legal effect of failing to deny an accusatory statement. An examination of the reporter's transcript discloses that at the trial (as distinguished from the preliminary examination) there was no evidence of an accusatory statement. Therefore, the instruction should not have been given. (8 Cal. Jur. § 606, p. 628.) The error, however, could not have been prejudicial. The instruction starts with the words: ''If you should find from the evidence,'' so that it did not tell the jury that an accusatory statement had been made. The evidence was clear and convincing. Under such circumstances, the error could not have been prejudicial. In *People* v. *Tuthill,* 31 Cal.2d 92, 101 [187 P.2d 16], the Supreme Court disposed of a similar contention in the following language: ''Defendant contends that prejudicial error was committed in the giving of an instruction as to the effect of an accusatory statement. The correctness of the instruction in the abstract is not questioned but it is argued that the jury might have been misled for the reason that there was no evidence in the record of any accusatory statement, and that the error was accentuated by the fact that the subject of accusatory statements had been brought before at least three of the jurors on *voir dire* examination. In the absence of any facts to which the instruction might apply it should not have been given. However, the giving of an instruction outside the issues or beyond the applicable facts is not reversible error unless it can be said to have been prejudicial. [Citing authorities.] Here there is no indication of prejudice. The jurors were presented with clear and convincing proof of defendant's guilt, and within an hour of submission of the cause to them returned their verdict of guilty. It is obvious that the omission of the instruction would not have altered their conclusion in any way.''

▉ The court also instructed on the legal effect of the failure of the defendant to testify. The instruction was in accord with article I, section 13, of the Constitution, which provides that ''in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury.'' The constitutionality of this section and of section 1323 of the Penal Code, also

so providing, has been upheld in many cases. (See *People* v. *Waller,* 14 Cal.2d 693 [96 P.2d 344]; *People* v. *Murray,* 42 Cal.App.2d 209 [108 P.2d 748]; *Adamson* v. *People of State of California,* 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223].)

■ Objection is also made to an admittedly correct instruction defining circumstantial evidence on the ground that there was no circumstantial evidence in the case to which it could have applied. Defendant is in error in contending that there was no circumstantial evidence in this case. There was the evidence of flight when Jack Foster whistled for a policeman at the time of the attempted theft from Betty Chapman, and the flight just prior to the defendant's arrest.

■ Some criticism is made of the instruction on reasonable doubt and presumption of innocence. The questioned instruction is a verbatim recitation of the provisions of section 1096 of the Penal Code. Section 1096a of the same code expressly provides that section 1096 may be read to the jury ''and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given.''

■ The only direct attack made on the sufficiency of the evidence is defendant's contention that he was not sufficiently identified. This contention is built around the evidence that both complainants described their assailant as 5 feet 5 or 7 inches tall, and he is, in fact, but 5 feet 1 inch tall. Both complaining witnesses at the trial positively identified defendant as the man who committed the crimes, and Betty Chapman was corroborated by Jack Foster. The objection merely goes to the weight of the evidence and cannot be considered on appeal.

The judgments appealed from are affirmed.

Ward, J., and Bray, J., concurred.