[Crim. No. 4293. Second Dist., Div One. May 16, 1949.]

THE PEOPLE, Respondent, v. ARTHUR VAN WYKE, Appellant.

Clarence H. Jordon and Hunter R. Skinner for Appellant.

Fred N. Howser, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

DRAPEAU, J.—During the latter part of 1947, the defendant and two associates were engaged in buying and selling secondhand automobiles. They became acquainted with a gentleman by the name of Jack L. Keyser and entered into an agreement with him whereby it was agreed to carry on this enterprise with a business setup as follows:

Mr. Keyser was to be the owner. The defendant was to be general manager, and defendant's two associates were to be salesmen and managers of certain used car lots which were to be acquired by the business. Mr. Keyser was to provide working capital, at least in a major part, and was to receive 60 per cent of the net profits; the defendant was to receive 40 per cent of the net profits. Before making this division of profits the salesmen were to receive 25 per cent of the profits at the lots which they were to manage.

A lot was rented, signs painted and placed thereon, reading "Keyser Motor Company" and automobiles displayed for sale.

In this business, in addition to working capital, a large part of the financing is done with what are termed "flooring contracts." A flooring contract is a trust agreement between a dealer, who holds an automobile for sale, and a person who lends money on it. The lender holds title and security interest in the car. When the car is sold, the loan is paid from proceeds of the sale. (Civ. Code, § 3014.5.) Arrangements for flooring automobiles for Keyser Motor Company were made by the defendant with several finance companies.

The business of Keyser Motor Company expanded rapidly. Mr. Keyser put in some money. Things seemed to be going well, until on December 5, 1947, a De Soto automobile came into the possession of the concern. It was a new car purchased by Mr. Smith, one of defendant's associates, employed by Keyser Motor Company. At that time a new car could be purchased from a new-car dealer and resold on a used-car lot for a considerable profit. This was the reason for purchasing this particular automobile. There was subterfuge involved in this transaction. Ostensibly the De Soto was purchased by Mr. Smith for his own use; whereas he and the defendant knew it was to be resold by Keyser Motor Company. And it was understood that when the car was sold Mr. Smith would get his money back which he had paid for it, together with a part of the profit realized from its sale.

When the De Soto reached the Keyser lot, the defendant floored it for $2,665. The individual who loaned the money gave the defendant a check for this amount, payable to Keyser Motor Company. The defendant endorsed the check, presented it to the bank for payment, was paid $2,665 in cash and kept the money.

Whereupon an information for grand theft was filed by the district attorney against the defendant; he pleaded not guilty, was tried by jury and convicted; then his motion for a new trial was denied, and he was sentenced to the state penitentiary.

At the trial, defendant testified that he cashed the check, and immediately gave the money to Mr. Keyser. This testimony was corroborated to some extent by the testimony of the salesmen and a janitor. On the contrary, Mr. Keyser testified that he did not receive the money and that he was still liable for the obligation on the flooring contract.

For another defense, the defendant testified that the business arrangement between him and Mr. Keyser was a partnership. If in fact there was a partnership the defendant could not have been convicted of grand theft even though he appropriated his partner's money.

Negativing this testimony, Mr. Keyser testified that there was no partnership. And the jury had for its consideration evidence showing a rather complete picture of the business relations of the parties. The defendant signed an approval of a statement as to a reserve account of the Keyser Motor Company, which recited that Mr. Keyser was the sole owner of the business. The usual agreement with the bank on opening the account of Keyser Motor Company, of which defendant had knowledge, made the same statement. The defendant signed an application for a fidelity bond for himself for the benefit of the Keyser Motor Company in which it was stated that he was an employee. There was a similar statement in an application to a financial company for credit. And one witness testified to a declaration by the defendant that he was the manager of the business and that Mr. Keyser was the owner.

By its verdict finding the defendant guilty, the trial jury resolved any conflict in the testimony, and there is substantial evidence to support the verdict. (*People* v. *McKnight,* 87 Cal. App.2d 89 [196 P.2d 104].)

 Several errors in rulings by the trial court on evidentiary matters are asserted. In order to understand the situation which developed as to certain rulings vigorously attacked by the defendant it is necessary to follow the subsequent history of the De Soto automobile heretofore mentioned. While the car was still on the lot and unsold, Mr. Keyser discharged the defendant. The defendant notified his two associates, the car salesmen, by telephone. Shortly thereafter they met with Mr. Keyser and demanded an accounting. A few days later while the De Soto was still on Mr. Keyser's lot, these two associates of the defendant went there, demanded the car, exhibited the white and pink slips issued by the Motor Vehicle Department showing ownership in Mr. Smith, and drove it away.

Testimony as to the taking of the De Soto under these circumstances was received by the court over objections by the defendant. This testimony was material in proof of fraudulent intent. The taking of the car was part of the transaction for which the defendant was on trial. He knew the circumstances under which the De Soto was purchased and that it

was held on a flooring contract. He told the owner of the flooring receipt that he hated the way that the car disappeared, and he knew that when the car was taken by his associates Mr. Keyser was left without the money or the car and with the obligation to pay the amount due on the flooring contract. Intent is a question of fact which may be proved like any other fact, by acts, conduct and circumstances connected with the offense. (*People* v. *Fewkes*, 214 Cal. 142, 148 [4 P.2d 538] ; *People* v. *Emery*, 79 Cal.App.2d 226 [179 P.2d 843].)

▓ Defendant complains of a ruling sustaining objection to a question on cross-examination relative to profit and loss of the Keyser Motor Company business. This was not proper cross-examination and the ruling was correct.

▓ Next, complaint is made of the exclusion of evidence showing custom as to compensation of automobile salesmen in southern California. Defendant argues that this evidence would have been of material assistance in proving his contention that there was a partnership. Objection to this testimony was properly sustained because the witness under examination was not qualified as an expert and his opinion under those circumstances would have been hearsay, even if such evidence were material.

▓ On cross-examination Mr. Keyser was asked whether he had filed with the county clerk a certificate of fictitious partnership required by the Civil Code; also questions relative to sales books kept by him before his association with the defendant. There was no error in excluding this evidence because it was immaterial to any issue in the case.

▓ Defendant complains of misconduct on the part of the district attorney, principally because of the following occurrence on the trial: During cross-examination of the defendant by the district attorney, he was asked if he knew that the De Soto had been pledged on a flooring agreement twice, once seven days before it was floored as already described. It later appeared that the car had been pledged but once, and the district attorney offered to stipulate that reference to prior flooring be stricken from the record. This was done and the jury was admonished not to give any consideration to the matter.

It would have been better if the district attorney had refrained from mentioning duplicate pledging of the car, not having definite proof thereof. However, the offending questions were stricken from the record and the jury admonished.

If there was any error this must be deemed to have cured it. (*People* v. *Gray*, 63 Cal.App. 59, 62 [218 P. 49]; *People* v. *Black*, 45 Cal.App.2d 87, 98 [113 P.2d 746].)

█ Defendant also suggests misconduct by the court in tone and manner, and general conduct appearing to favor the prosecution. There is nothing in the record which indicates any misconduct of the trial judge. No reference to, or objection to any of these things was voiced by counsel for the defendant at any time during the trial. The court did question one of the witnesses. There is nothing wrong about that. In fact it is the duty of the trial judge to examine witnesses if he sees fit to do so, and if the examination is without prejudice to the rights of the parties. (*People* v. *Golsh*, 63 Cal.App. 609 [219 P. 456].)

Finally, defendant claims error in the giving, refusal, and modification of several instructions. A reading of the instructions as a whole demonstrates that the jury was fully and fairly instructed as to the law applicable to the case and that there was no error as to the matters complained of by the defendant.

The judgment and the order denying a new trial are affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 26, 1949, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1949. Carter, J., and Schauer, J., voted for a hearing.