[Crim. No. 803.   Fourth Dist.   July 22, 1949.]

THE PEOPLE, Respondent, v. ARNOLD MOODY,
Appellant.

J. M. Lopes and John A. Chase for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged in an amended information with violating the provisions of section 480 of the Vehicle Code, which was set forth in three separate counts. Count one charged that he was the driver of an automobile involved in an accident with another vehicle which resulted in the injury of two persons, Rebecca Blacksher and Rose Mary Turner, and that he did wilfully and feloniously fail and omit to immediately stop the vehicle driven by him. Count two charges that in so driving said vehicle, he did wilfully

and feloniously fail and omit to give his name, address and registration number of his vehicle. and the name of the owner of the vehicle, and to exhibit his operator's license to the driver or the occupants of the other automobile. The third count charges that in so driving said vehicle he injured the above-named parties and that he did wilfully and feloniously fail and omit to render them reasonable assistance, including the carrying or making arrangements for the carrying of such persons to a physician or hospital for medical treatment. Defendant entered a plea of not guilty to each count. After trial by jury the verdict rendered was not guilty of counts one and two, but guilty of count three. ■ Defendant, on appeal, complains first that the evidence does not support a conviction on count three.

According to Mr. Blacksher, in the afternoon of September 7, 1948, he was driving south of Tulare on Highway 99 (two-lane) at about 45-50 miles per hour. His car had five passengers in addition to Rebecca Blacksher and Rose Mary Turner. The car driven by defendant was proceeding in the same direction but faster, and was attempting to overtake and pass the Blacksher car when a truck appeared ahead of him which was proceeding northerly. To avoid colliding with it defendant turned back into the west lane and ran into the side of Blacksher's car and crowded it off of the highway. It ended up about 80 yards from the point of collision. Although other evidence does not so indicate, the prosecuting witness testified that his car was "upset." Defendant's car remained on the westerly edge of the highway. Both cars were so damaged that neither could be driven away. After the collision Blacksher went back to defendant's car. Blacksher knew him. Defendant accused him of "sitting still" in the road. Blacksher denied the accusation. Defendant failed to go over to the Blacksher car, did not talk to any of the other passengers, and did not inquire if anyone was hurt. He cursed Blacksher, and he and two women who were with him, left the scene in a car belonging to an acquaintance of defendant who happened to pass by at that particular time.

While defendant was standing near his car, the passengers of the Blacksher car got out. Rebecca Blacksher was pregnant at the time and had her hand on her back. She was sitting on the running board of the Blacksher car. She was in pain, acted very nervous, and told every member of her family that she was hurt. Blacksher testified that he could tell that she was hurt or injured. Rose Mary Turner's arm was injured.

After defendant left the scene the two injured persons were taken to a doctor and it was discovered that Rebecca had three bones dislocated in her neck and two in her back, and it was five or six weeks before she was "able to do anything."

Defendant and his companions proceeded to Tipton. Defendant gave a tow-car attendant the keys to his damaged car and told him to pick it up and bring it in and "don't talk to anybody." In the meantime, the highway patrol had been notified of the accident. They conducted a search for defendant. Defendant, his brother, and a Mrs. Aaron, owner of the car, were at a bar in Tipton. They observed the traffic officer passing by but made no effort to contact him. Mrs. Aaron signed a statement that just as the officers came in the front door of a bar defendant Moody went out the side door and she knew that defendant saw them. Defendant admittedly had been drinking prior to the accident. He later called a constable and they proceeded back to the scene of the accident and en route met a highway patrol officer who took charge of the defendant.

Defendant's witnesses contradicted the People's testimony in reference to the speed of the Blacksher car and indicated that it was traveling at about 10 miles per hour just before the accident and that defendant did make inquiry of the occupants of the Blacksher car as to their injuries, if any, and was informed that no one was injured; that defendant told Blacksher his name and that he lived in Tipton; that he did not exhibit his driver's license because he "didn't have any."

A Mrs. Price, one of the occupants of defendant's car, testified that she did not see defendant go and ask the occupants of the Blacksher car if any of them were injured. In rebuttal Blacksher insisted that Moody spoke to no other member of his party than himself at the scene of the accident; that Moody never told him his name although he asked him for it; that he never showed him his driver's license nor gave him the registration number of the car he was driving, and never made any inquiry of him or anyone else in his presence as to whether anyone was injured, and that no other passenger in his car went back to talk to the defendant.

The uncontradicted testimony shows that the vehicle driven by defendant was involved in an accident with another vehicle; that two of the occupants of the other car were in fact injured as a result thereof and that defendant did not render any assistance to them. The claim is that there is no showing that defendant had knowledge that someone was injured at

the time and that no one informed him of that fact. The trial judge read count three to the jury as charged, and the jury was properly instructed that "The driver of any vehicle *knowingly* involved in an accident resulting in injury . . . to any person shall . . . etc." Sections 480 and 482 of the Vehicle Code were then read to the jury which, when read together, require the driver of any vehicle involved in an accident resulting in injury to any person to render "reasonable assistance, including the carrying or the making arrangements for the carrying of such persons to a physician, . . . or hospital for medical . . . treatment *if it is apparent* that such treatment is necessary." Other instructions as to the necessity of knowledge on the part of defendant of such resulting injuries were given, and the jury, apparently, decided the issue of knowledge against defendant's claim. ■ While there is no direct testimony on the part of the defendant that would show he knew someone was injured as a result of the accident, it could not be expected that direct testimony could be obtained in such a case as this. Two persons were in fact injured. One sat in a position which indicated some pain and suffering which was apparent to Mr. Blacksher and should have been apparent to the defendant, after such a serious collision. Defendant's conduct in leaving the scene and endeavoring to escape apprehension from the highway patrol officer and his statement to the tow-car attendant about remaining silent, tended to indicate some consciousness of guilt. From the nature of the case it was only necessary to prove knowledge, as here indicated, by showing the surrounding facts and circumstances. (*People* v. *Henry,* 23 Cal.App.2d 155, 159 [72 P.2d 915] ; *People* v. *Dallas,* 42 Cal.App.2d 596 [109 P.2d 409].) ■ Where, as here, there is a conflict in the evidence occasioned by the defendant's denial that he knew of the injury, and the circumstances sufficiently indicate that he did know that persons were injured in the accident, the determination of the jury is conclusive on appeal. (*People* v. *Libhart,* 79 Cal.App. 291, 293 [249 P. 211] ; *People* v. *Kaufman,* 49 Cal.App. 570, 573 [193 P. 953] ; *People* v. *Roche,* 49 Cal.App.2d 459 [121 P.2d 865].)

■ Defendant next maintains error in the giving of instruction No. IX, which informed the jury that the wilful failure of the driver to perform any one of the duties required by sections 480 and 482 of the Vehicle Code is a criminal offense but before the jurors may return a verdict of guilty, they not only must agree that defendant failed to perform

a duty imposed by law but they must also agree on at least one particular duty that he failed to perform. The error claimed is that the instruction is too broad and misleading, citing *People* v. *Scofield*, 203 Cal. 703, 711 [265 P. 914]. The particulars as to why the instruction is claimed to be too · broad and misleading are not set forth. Suffice to say it is adopted from CALJIC No. 974, page 711, and we perceive nothing in the instruction opposed to the holding in the Scofield case. The facts in that case were entirely different and the instruction criticized likewise is not comparable.

It is next urged that the trial court should not have instructed the jury on "flight of a person immediately after the commission of a crime," which was given substantially in the language of section 1127(c) of the Penal Code, since the evidence does not support such an instruction. ▇ Any conduct of a defendant subsequent to the commission of a crime tending to show "consciousness of guilt" is relevant and admissible, and flight is a circumstance to be considered by the jury in determining if there is a consciousness of guilt. (*People* v. *Gryszkiewicz*, 88 Cal.App.2d 230, 235 [198 P.2d 585].)

▇ An instruction on flight is always proper where there is evidence in the case indicating such conduct. (*People* v. *Gregoris*, 70 Cal.App.2d 716 [161 P.2d 568].) The abrupt departure of the defendant from the scene of the accident, the existence of the facts from which the jury could have inferred that the defendant was seeking to keep away from the state highway patrol, and the manner in which he finally gave himself up, together with his statement to the tow-car operator to bring in the car but not to talk to anybody, were all such facts as would justify the trial court in giving the jury an instruction on flight. No error appears in this respect.

We have examined the questioned instructions, together with all other instructions given. As a whole, the jury was fairly advised as to the elements of the offense necessary to be proved before they could convict the defendant on count No. 3. It was likewise fully instructed concerning the burden of proof, presumption of innocence, and the doctrine of reasonable doubt. No prejudicial error appears. (*People* v. *Henry*, 23 Cal.App.2d 155 [72 P.2d 915].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.