[Crim. No. 823.   Fourth Dist.   Sept. 26, 1950.]

THE PEOPLE, Respondent, v. WILL E. NORRIS, Appellant.

Arthur J. May for Appellant.

Fred N. Howser, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged with the crime of grand theft and by a jury was found guilty as charged in the information. He applied for probation, made a motion for a new trial, and after the denial of probation and of the motion, was sentenced to the state prison at San Quentin.

This appeal is from the judgment of conviction and from the order denying the motion for new trial. The grounds of appeal are (1) That the evidence is insufficient to sustain the judgment of conviction; (2) that the court erred in the admission of evidence; (3) that the prosecuting attorney was guilty of prejudicial misconduct; and (4) that the court misdirected the jury in matters of law.

On October 18, 1948, defendant obtained a watch and a diamond ring from Mr. Lewis, a jeweler in Tulare. The watch (sales price $342) and the ring (sales price $125) were delivered to defendant at the Lewis jewelry store and were taken by defendant on "memo" for the purpose of sale on

consignment. Defendant agreed to sell the articles on commission and to return the property or pay for it. It was understood that the title thereto did not pass by virtue of the "memo" and that the accounting period under such circumstances was generally from five to fifteen days.

On October 30th defendant again went to the Lewis store and stated that he had some prospects for the ring and watch previously taken out and that he had a "hot" prospect for some diamonds and wanted to know if he could take some diamonds out on "memo" on the same arrangement as before. Mr. Lewis agreed and the defendant signed a memorandum for two diamonds, valued at $1,135 retail, and a 17-jewel diamond Bulova wrist watch of the retail value of $674. Defendant stated that he would sell these articles on the same basis as the merchandise he obtained on the 18th of October, but if he didn't sell them, he would bring them back.

On November 1st defendant purchased a topaz ring from Mr. Lewis and on November 26th brought a lady's wrist watch to Mr. Lewis and requested that he obliterate the name inscribed on it.

On or about the 28th day of November, defendant took a pair of lady's earrings and a lady's small diamond ring to Lewis and asked that the diamond be taken out of the ring and mounted on one of the earrings. Defendant then ordered an additional diamond, left the store and did not thereafter return or communicate with Mr. Lewis. The jewelry received by defendant was not returned to Lewis or paid for.

On December 3d a statement was sent to defendant for all the merchandise that he had taken out on memorandum and for the amount remaining due on the topaz ring which he had purchased. Defendant's wife brought the statement to the Lewises and informed them that defendant was gone. Mr. Lewis then swore out a warrant for defendant's arrest. He was apprehended in Houston, Texas, in October of 1949, and returned to California for trial in January, 1950.

The defendant testified in his own behalf and stated that it was agreed between him and Mr. Lewis that he (defendant) was to sell the jewelry on commission and was either to return it or the money therefor; that he had received the statement for the jewelry and left Tulare on December 5th, 1948, because of family difficulties; that just before he left Tulare, he placed the stones that he had obtained from Mr. Lewis in an envelope at the Owl Café with instructions for his wife to return them.

He stated that he had not sold any of the jewelry and had not checked to see if it had been given back to Mr. Lewis.

Defendant's wife testified that she was running the Owl Café in Tulare on December 4th and 5th, 1948, and that the defendant had left town on December 5th. She testified that no package or envelope containing the jewelry was ever left with her and denied that the defendant had left a package of jewelry addressed to her at the café.

Appellant's contention that the evidence does not sustain the judgment of conviction is without merit. The evidence is sufficient to show the commission of embezzlement under section 484 of the Penal Code, defining theft.

Defendant was the agent of the complaining witness and entrusted with the control of the personal property of Mr. Lewis for the purpose of sale on commission. Defendant fraudulently appropriated such property to his own use, contrary to the provisions of section 506 of the Penal Code, which provides generally that any person entrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement. (*People* v. *Applegate,* 91 Cal. App.2d 163, 173 [204 P.2d 689].)

Defendant contends that when he was billed for the jewelry on December 3, 1948, it was the intention of Mr. Lewis that it was merely an account between them and that title vested in defendant to the property entrusted to him. However, the defendant and Mr. Lewis both testified that the memorandum did not pass title but only turned over custody of the jewelry. Defendant's contention is further refuted by his testimony that he returned the jewelry to the Owl Café with directions to return it to Mr. Lewis. The demand mailed to defendant on December 3d was a request for the return of the jewelry or the money therefor, if it had been sold, and was in accordance with the prior agreement between the two men. The jewelry was never returned to the complaining witness nor was it sold in accordance with the terms of the agreement. The intent of the defendant to unlawfully deprive the prosecuting witness of his jewelry was a question of fact provable like any other fact by the acts, conduct and circumstances connected with the offense. (*People* v. *Fewkes,* 214

Cal. 142, 148 [4 P.2d 538]; *People* v. *Van Wyke,* 91 Cal. App.2d 839, 843 [206 P.2d 53].)

The defendant left the state of California and failed to communicate with the complaining witness as to the disposal of the jewelry. These and other circumstances shown by the record were sufficient to justify the implied finding of the jury as to felonious intent. Intent is a question to be determined by the jury under the evidence before it (*People* v. *Payne,* 117 Cal.App. 108, 112 [3 P.2d 328]) and unless the determination of intent is without any substantial support in the evidence, the finding of the jury as to such intent is conclusive upon appeal. (*People* v. *Raines,* 66 Cal.App.2d 960, 962 [153 P.2d 424].) The defendant's denials and assertions with reference to the circumstances under which he took the jewelry and his subsequent disposition of it merely created a conflict in the evidence which the jury resolved against him. Since the circumstances reasonably justify the verdict of the jury, its finding will not be here interfered with. (*People* v. *Huizenga,* 34 Cal.2d 669, 675 [213 P.2d 710].)

The defendant's contention that the court erred in the admission of evidence has to do with the testimony relating to other offenses and was introduced by the prosecution for the purpose of establishing fraudulent intent. This testimony was substantially that the defendant, representing himself as an insurance adjuster for the Farmers Insurance Company, in October of 1948, obtained a ring from a jeweler in Oakland; that a memorandum was drawn up for the ring and defendant left with it, never to return.

Evidence was also introduced to the effect that the defendant was employed as an agent by the Farmers Insurance Group on June 21, 1948, and left their employ on September 13th of that year; that he sold eight policies during the time of his employment and failed to remit funds due his employer.

The evidence as to the Oakland transaction was clearly admissible under the circumstances, as in the prosecution of grand theft in the nature of embezzlement, evidence is admissible of acts of a similar nature committed by the defendant before and after the date of the act upon which the conviction is predicated. (*People* v. *Kendall,* 65 Cal.App.2d 569, 570 [151 P.2d 39]; *People* v. *Thompson,* 85 Cal.App.2d 261, 264 [192 P.2d 802].) While the admission of the evidence relating to the defendant's failure to remit moneys to the Farmers Insurance Group was questionable, the error, if any, is not sufficient to justify the reversal of the judgment.

█ It is contended that the prosecuting attorney was guilty of misconduct in introducing the testimony relative to other offenses and in attempting to introduce evidence for the sole purpose of defaming the character of the defendant. The particular questions objected to are not set forth in this specification of error but only the conclusion that it was misconduct. In the absence of a showing that the prosecuting attorney asked questions solely for the wanton purpose of creating a prejudice against the defendant or that his acts militated against a fair and orderly procedure, it cannot be said that his conduct was prejudicial or offensive. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 693, 694 [161 P.2d 833].)

█ Finally, it is contended that the trial court erred in instructing the jury on the subject of flight. It is not contended that the instruction was in itself faulty but it is argued that there was no evidence of flight. The defendant left California on December 5, 1948, and went to Houston, Texas, where he was arrested in September of 1949. The question as to why he left this state was one for the jury. (*People* v. *Gregoris*, 70 Cal.App.2d 716, 720 [161 P.2d 568]; *People* v. *Goodwin*, 202 Cal. 527, 541 [261 P. 1009]. The evidence was sufficient to warrant the giving of the instructions regarding flight. (*People* v. *Peak*, 66 Cal.App.2d 894, 910, 911 [153 P.2d 464].) The jury, under the circumstances herein, could not have been misled by the instruction given.

█ The defendant complains of an instruction defining a trustee. This instruction merely stated that a trustee is one who is in a fiduciary relationship to another and that a fiduciary is under a duty to act for the benefit of the other as to matters within the scope of the relation. We see no error in not giving additional instructions on the definition of a trustee, particularly where no such additional instructions were requested.

The judgment and order are affirmed.

Griffin, Acting P. J., concurred.