[Crim. No. 5008.   Second Dist., Div. One.   Oct. 19, 1953.]

THE PEOPLE, Respondent, v. JOSEPH E. ANDARY, Appellant.

Levy, Bernard & Jaffe, Saul L. Bernard and Reuben Freedman for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

DRAPEAU, J.—By information containing two counts, defendant was charged with the crime of grand theft. A jury found him "not guilty" of the offense charged in Count I,

to wit: feloniously taking $1,000 in money. The jury found him "guilty" of grand theft, as charged in Count II, to wit: feloniously taking $4,243.50 in money, the personal property of Lawrence C. Nosco. Thereafter, defendant's application for probation was denied, and judgment and sentence were pronounced.

From the judgment of conviction and from the order denying him a new trial, defendant appeals.

Defendant and the complaining witness, Mr. Lawrence C. Nosco, met in the spring of 1950, while they were playing softball on opposing teams. Mr. Nosco was 32 years of age and was employed by Los Angeles County. Defendant was a professional boxer, known as Tony Janiro. He was 21 years old and had been discharged from the Army for disability.

The two men became friends and had many discussions regarding their personal affairs and interests. Defendant wanted to quit boxing and go into business for himself. Nosco was anxious to invest in a business in order to augment his income.

In June of 1950, defendant told Nosco that he owned a $40,000 fight training camp; a $15,000 interest in a health association; an interest in a movie script of the story of his life worth $30,000; and two automobiles.

He showed Nosco a document indicating that he had an investment in the health association of $15,000, and Nosco saw two automobiles parked in front of defendant's house.

Defendant knew Mr. Rex Bixby, who was connected with the Gem Water Softener Company. He reported to Nosco that he had talked to Mr. Bixby, and that the latter told him it would be necessary to purchase 500 softeners at $10 each, in order to get the West Coast franchise for distribution thereof. Defendant also told Nosco that it would be easy to sell the softeners for about $27.50 each; that the investment would require about $5,000, and defendant promised to guarantee Nosco for every penny that he put in. He said he wanted Nosco to be secured so that he would not sustain a loss if the business did not pay.

To start the project, defendant told Nosco he would need $1,000 for 100 softeners, and that if they decided not to go ahead, the company would refund the $1,000 within 90 days.

The two men agreed on an equal division of the profits and defendant promised to have a formal contract prepared.

' After many discussions, Nosco gave defendant his check for $1,000 payable to defendant's order, dated July 31, 1950.

Defendant gave Nosco "a promissory note as a receipt for the money," pending execution of the promised contract. Defendant testified he turned over the $1,000 to Mr. Bixby and received 100 softeners from him. This was denied by Bixby.

On August 19, 1950, Nosco gave defendant another check for $4,243.50, to cover the balance agreed upon. As security therefor, defendant gave to Nosco the following three instruments which Nosco accepted "as security until he (defendant) got the contract made."

(1) A letter dated December 15, 1948, written on the letterhead of American Independent Medical and Health Association, signed by J. C. Fortune, as president, and A. G. Howard, as secretary. This document recited that defendant had placed $15,000 with said company, which entitled him to a monthly interest payment of $187.50.

(2) Attached to said letter was an assignment by defendant to Nosco of a 50 per cent interest in defendant's contract with the health association. At the bottom of the assignment appeared the purported signature of "Charles W. Ostrom Att. in fact."

(3) Assignment by defendant of 50 per cent of his share in the story of his life "Fear of Death." This assignment was dated August 18, 1950, was signed by Tony Janiro, and showed a purported notarization by "Modess Moscowitz."

Mr. Fortune testified that he never wrote the letter of December 15, 1948; did not sign his name thereto, and that defendant had never placed $15,000 on deposit with the association. A. G. Howard testified likewise, that the signature on the letter was not her signature, and that the company had never received the $15,000 from defendant.

Mr. Ostrom testified that he did not sign his name at the bottom of the assignment and that the signature appearing thereon was not his.

Also, the records of the Los Angeles county clerk's office failed to disclose the name "Modess Moscowitz" listed as a notary public.

Nosco testified that in paying the $4,243.50, he relied upon the genuineness of the signatures and the truth of the documents, above mentioned, and also upon defendant's "financial background as to everything he told me at the April first meeting." He believed defendant's promise that he would take the money and pay it to the Gem Water Softener Company

for the softeners, otherwise he would not have given the money to defendant.

Defendant testified that shortly after he got the $4,243.50 from Mr. Nosco, he told Mr. Bixby that the money was available. However, Bixby informed him that, due to the delay in raising it and because of the illness of Mr. Wilson, president of the company, it might take several months before he (Bixby) could go ahead. Defendant refused to leave the money with Bixby in the meanwhile, as requested by Bixby, stating that there was a chance he might invest it in steel. The Gem Water Softener Company was later dissolved and ceased doing business after the death of Mr. Wilson in October, 1951.

Mr. Nosco testified that after he gave defendant the $4,243.50 check, he had a talk with Mr. Fortune, president of the health association. Thereafter, he called on defendant and told him he was no longer interested in the water softener business, because he had learned that it was no longer prospering; that he wanted his money back. Defendant kept putting him off. He took a trip to Europe and used part of Nosco's money to buy an MG automobile and to pay for transportation, hotel bills and other expenses. When he came home, Nosco again demanded a return of his money. Defendant claimed he had made an investment in a European import-export business and intended to form a corporation. Again Nosco told him he was not interested in any business.

In the spring of 1951, Nosco made a last effort to get his money back. Defendant told him he was working on it; that his fight training camp had been "absorbed in a previous trial"; the automobile was gone; his $15,000 investment had been lost; but he would try to see if he could get some money on the "story of his life." Ultimately, defendant said to Nosco: "Well, take me to court. Sue me. Take me to court."

Defendant testified at the trial that he had never put $15,000 into the health association; admitted he told Nosco he had an interest in the association and when asked: "You didn't tell him (Nosco) that you had not paid the $15,000 in, did you?" he replied: "No, I didn't. Why should I tell him?"

Appellant urges that the evidence is insufficient to establish the crime of grand theft because:

(a) It failed to show any false representations as to past or existing facts; (b) the documents relied upon were insufficient to corroborate the charge of false pretenses; (c) the evidence of false pretenses failed to establish that crime.

(d) The evidence failed to show (1) intention to defraud; (2) commission of actual fraud; or (3) guilt of either embezzlement or larceny by trick.

The following language in *People* v. *Waxman,* 114 Cal. App.2d 399, 405 [250 P.2d 339], is fairly applicable to the problem posed by the instant appeal, to wit:

"The judgment in a criminal action is final as to the sufficiency of the evidence unless *'it can be held that sufficient facts could not have been found'* by the trial court to warrant its implied findings, and before they 'can be set aside . . . it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' (*People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353] ; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) That there is a sound hypothesis in the law and also abundant material evidence contained in the record of this action to support the judgment cannot be doubted.

"In order to simplify criminal procedure, the Legislature in 1927 consolidated the statutes on larceny, false pretenses and embezzlement in one, under the heading of 'theft.' (Pen. Code, § 484; see, also, §§ 485 to 490a.) *While appellant recognizes that grand theft may be established by proving that the accused obtained the money of his victims by any one of the three crimes, he has at great pains attempted to show that the evidence is not sufficient to justify a finding of guilt under any of the three hypotheses embraced within section 484."* (Emphasis added.)

And, as stated by this court in *People* v. *Hiden,* 102 Cal. App.2d 655, 659 [228 P.2d 95] :

"Defendant's contentions of insufficiency of the evidence to support the counts of the information are answered if a theory of theft which will meet the test of reasonable doubt may be drawn from the evidence.

"Penal Code, section 484, now amalgamates the crimes of larceny,. embezzlement, false pretenses, and kindred crimes under the cognomen of theft. (*People* v. *Myers,* 206 Cal. 480 [275 P. 219] ; *People* v. *Cannon,* 77 Cal.App.2d 678 [176 P.2d 409].) Like charity, California's definition covers a multitude of sins. No longer need the legal profession puzzle over fine distinctions between embezzlement, larceny, and other elements of stealing. The crime is complete if a man takes property not his own, with intent to take it.

"This section of the Penal Code makes it a crime for any person 'by any false or fraudulent representation or pretense'

to 'defraud any other person,' and to 'fraudulently appropriate property which has been entrusted to him.' "

The evidence in this case, above recited, established beyond a reasonable doubt that appellant falsely represented to Mr. Nosco that he had a present, existing interest in the health association, when in truth and in fact he had no interest at all.

The script of the story "Fear of Death" was introduced in evidence, together with expert testimony that it had a potential value of $30,000. All of this was considered by the jury. And under section 1127b of the Penal Code, "The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable."

The implied findings of the jury that the two assignments, executed by appellant and relied upon by Mr. Nosco, were worthless, must be sustained.

Section 1110, Penal Code, requires that "Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense . . . or having obtained from any person any . . . money . . . the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of defendant, or unless the pretense is proven by the testimony . . . of one witness and corroborating circumstances."

Compliance with this section is found in the testimony of Mr. Nosco that he relied upon appellant's statement that he had placed $15,000 with the health association. The false purported letter of the association is in evidence. It was not issued by the association. Neither the president nor the secretary signed it. Nonetheless, appellant personally executed an assignment to Nosco of said false purported interest, knowing that he did not possess it.

Without enumerating the elements that go to make up the crimes of false pretenses, embezzlement and larceny by trick or device, suffice to say that the evidence here produced was amply sufficient to sustain a conviction upon any or all of these offenses:

False pretenses: False representations made by appellant with intent to defraud; belief and reliance of Nosco upon such representations, who, while so believing, parted with his money.

Embezzlement: The money having been obtained for a specific purpose, was not used for that purpose and was not returned to Nosco, raising the inference that appellant originally intended to pay it to the Gem Water Softener Company, but changed his mind.

Larceny by trick and device: The evidence supports the inference that appellant, although he represented he would pay the money to the water softener company, intended when he received it, to appropriate it to his own use; and that Nosco did not intend to pass title to appellant so that he could use it as he saw fit. (*People* v. *Jones,* 36 Cal.2d 373 [224 P.2d 353]; *People* v. *Waxman,* 114 Cal.App.2d 399 [250 P.2d 339].)

■ As was so aptly stated by the Supreme Court in *People* v. *Nor Woods,* 37 Cal.2d 584, 586 [233 P.2d 897]: ". . . defendant could be found guilty of theft by one means or another, and since by the verdict the jury determined that he did fraudulently appropriate the property, it is immaterial whether or not they agreed as to the technical pigeonhole into which the theft fell. (*People* v. *Jones,* 61 Cal.App. 2d 608, 622-623 [143 P.2d 726]; *People* v. *Caldwell,* 55 Cal. App.2d 238, 256 [130 P.2d 495].)"

■ The briefs of appellant contain many arguments properly addressed to triers of fact. They are of no concern to an appellate court where as here, there is substantial evidence to support the verdict. (*People* v. *Jones, supra,* 61 Cal. App.2d 608, 627.)

■ Appellant urges that the verdict guilty as to count II and not guilty as to count I are inconsistent. Section 954 of the Penal Code provides: "A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count." See, also, *People* v. *Shaw,* 115 Cal.App. 2d 597, 602 [252 P.2d 670].

■ Appellant asserts the prosecuting attorney was guilty of prejudicial misconduct. The testimony of Mr. Fortune and Mrs. Fortune, formerly Miss Howard, revealed that their purported signatures on the letter of December 15, 1948, were similar to rubber stamps which were kept in the office. During questioning of Miss Howard, she was asked: "Were they (the rubber stamps) kept in such a place that this defendant could have access to them for the purpose of making an impression of them and then making a tracing over that? A. I imagine anybody coming into the office could do that. Q. Does that include the defendant? Were they acces-

sible to him? A. Yes, sir. Q. Was he around there sometimes? A. Yes, he was in the office several times."

No objection was made to the questions propounded and no motion was made to strike the answers given. And, as stated in *People* v. *Norris*, 99 Cal.App.2d 658, 663 [222 P.2d 283]; "In the absence of a showing that the prosecuting attorney asked questions solely for the wanton purpose of creating a prejudice against the defendant or that his acts militated against a fair and orderly procedure, it cannot be said that his conduct was prejudicial or offensive."

▉ Appellant argues that a cautionary instruction, based on appellant's testimony that the transaction was a loan, was essential, and failure to give it to the jury was prejudicial.

This instruction was not requested. And, as said in *People* v. *Klor*, 32 Cal.2d 658, 662 [197 P.2d 705]:

"It is true that in a criminal case a jury should be given instructions on the general principles of law applicable to the case and even if not requested by the parties such instruction should be given by the court of its own motion. But this is not the rule to specific points developed at the trial. Unless instructions thereon are requested by the parties desiring them, it is not incumbent on the court to give them of its own motion where the jury is otherwise fully and fairly instructed on the general principles of law involved in the case."

▉ Error is also urged in the refusal of the court to give an instruction to the effect that "an assignment is effective to pass title without the presence of any signatures of witnesses, seals or notaries."

The testimony of Mr. Nosco was that when he took the two assignments and gave his money to appellant, he relied on the signatures appended thereto: C. W. Ostrom, an attorney, and Modess Moscowitz, a notary public; and that he would not have parted with his money if he had not believed the signatures were genuine.

The assignments were in evidence. And it was for the jury to determine the true nature of the transactions. The requested instruction was properly refused.

▉ Appellant urges error in the refusal of the court to give his tendered instruction defining partnership. Such refusal was proper. There is no evidence in the record that the parties had formed a partnership.

▉ Finally, appellant urges that the court abused its discretion in refusing a continuance.

The record shows that on October 29, 1952, Mr. Zeman's request to be substituted for Mr. Rosen was denied without prejudice, the trial court indicating that the matter was expected to go to trial on November 5th. It also shows that Mr. Zeman came into the cause two days before the trial started, and that after two days of trial, Mr. Zeman, at his request, was granted three days in which to outline his procedure. The trial consumed seven days: November 5, 6, 7, 10 and 12, the 13th was taken up with arguments of counsel; on the 14th the jury was instructed, deliberated and returned its verdict. It thus appears that Mr. Zeman had at least five days for preparation and was furnished with a reporter's daily transcript of the testimony. An examination of the entire record reveals that appellant's counsel was well prepared and informed on all phases of the case and represented him capably and conscientiously. No substantial right of appellant was prejudically affected by the denial of his motion for a continuance.

For the reasons stated, the judgment and the order appealed from are, and each of them is, affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 16, 1953.