[Crim. No. 4567. Second Dist., Div. Two. Mar. 21, 1951.]

THE PEOPLE, Respondent, v. MAURICE KRAMER, Appellant.

Harry T. Shafer and Angelo Iacoboni for Appellant.

Fred N. Howser, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of two felonies: (1) robbery and (2) burglary. Displeased with the treatment he received he demands reversal of both judgments on

the grounds that (1) the crime of burglary was "in fact not even attempted"; (2) the joinder for trial of the two counts was prejudicial error.

## THE ROBBER IDENTIFIED

█ The robbery occurred in a Pasadena market. About 9 o'clock on an April evening, assistant manager Christianson locked the doors, removed the money from the cash registers and placed it in moneybags. He entered the rear room of the market and put the money in the safe. Having turned off the lights, as he donned his jacket and started to leave, a disguised person approached him with the salutation: "Stand still or I will blow your brains out, this is a hold up." After learning of the presence of clerk Topalian in the main store appellant, holding a gun, commanded the clerk to come into the back room "or you are going to get hurt." After Topalian arrived at Christianson's side the two employees were ordered by the intruder to turn on the light. After the room was further illuminated, with an oath appellant ordered Christianson to open the safe. This accomplished, the stranger ordered his victim to "slide the money over to him." Having placed $91 in the sacks he forced the two men into the corner where he had been concealed before first approaching Christianson. He ordered the men to lie face down on the floor. He tied Christianson's wrists and feet with a rope and tied Topalian's wrists behind his back. In response to his inquiry, Christianson told him that the only way out was through the front door. Promptly after the bandit had made his exit, Topalian unloosened the thongs that bound him and untied his companion. Both men suffered fear during the robbery.

Both employees recognized appellant at the trial as the robber. Also, prior to the trial Christianson was taken to the Hollywood police station and there identified appellant in a line-up of six men as the robber after he had been dressed in the disguise he had worn at the robbery, also by his general appearance, his ears, his bushy eyebrows, his accent and by the revolver which had been taken from the prisoner in Hollywood. Notwithstanding appellant's denial of his guilt and other testimony favorable to his contention the testimony of Topalian and Christianson was sufficient to establish appellant's identity as the robber of the Pasadena market on that April evening. █ It is the primary duty of the fact finder to determine what has been established by the evidence and no amount of argument or fine words can alter that rule.

■ Also, before the findings of the trial court can be set aside on appeal by reason of insufficiency of the evidence it must clearly appear that upon no hypothesis is there sufficient substantial evidence to support the conclusion of the trial court. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) His conviction of the robbery was justified.

## THE BURGLARY PROVED

The burglary occurred at a grocery and meat market on Melrose Avenue in Los Angeles at about 5:45 p. m. six days after the robbery in Pasadena. On discovering appellant crouched behind some packing cases in the rear of the store, the manager telephoned the police. On his arrival Officer Fisher found appellant still crouched behind boxes in the stock room.

Appellant contends that since there was "no overt prohibited act and no concurrent criminal intent there cannot be a crime of burglary"; that "it is admitted that he entered the store premises during business hours and was lawfully on the premises at the time of the alleged commission of the crime . . . in fact behaving in a manner not unbecoming a person shopping therein."

But the statute makes every person who enters any store with intent to commit any felony guilty of burglary. (Pen. Code, §§ 459, 490a.) ■ The store entered by appellant for the purpose of committing a robbery falls within the class of buildings named in section 459. (*People* v. *Corral,* 60 Cal.App.2d 66, 70 [140 P.2d 172].) ■ While it is true that his entry was made during business hours when the public was invited to enter, still he entered with intent to steal or rob. Hence, his entry was burglarious and the crime was complete the moment he entered. (*People* v. *Corral, supra,* 71.) Not only did he admit to the officers that he had got the idea of burglarizing the market two days before his entry, but he confessed to them that he went there to "knock the place over . . . to stick it up." Also, when arrested as a suspected burglar, he was armed with an automatic loaded revolver, carried a piece of twine, a rope, a mask and a pair of goggles, wore rubber gloves and was hiding in the back room. From his possession of such trappings and his confessed purposes it was a fair inference that his intent to steal or rob was concomitant with his entry into the store. (*People* v. *Smith,* 84 Cal.App.2d 509, 512 [190 P.2d 941].) ■ The question of the existence of his criminal intent was for the determination of the trial court. (*People* v. *Lynch,* 60 Cal.

App.2d 133, 139 [140 P.2d 418].) Likewise, it was empowered to disregard appellant's exculpatory testimony on finding it unworthy of credence.

## JOINDER OF BOTH COUNTS FOR TRIAL

 Despite the wholesome rule enunciated in *People* v. *Newland*, *supra*, appellant opines that he was unjustly convicted of the robbery because he was tried for that crime along with the burglary charge and the People had an unfair advantage on the issue of identity. He contends that whereas the testimony introduced to prove that he was the robber was weak and unsatisfactory there was nothing wanting in the proof that he had committed the burglary. Therefore, he argues that his trial for robbery was aided by the proof of the burglary; that the attention of the jury was distracted and his rights were adversely affected by the proof of the burglary, and that in the interest of fair play he should have had separate trials for the two crimes. He cites Orfield's "Criminal Procedure from Arrest to Appeal"; *Commonwealth* v. *Slavski*, 245 Mass. 405 [140 N.E. 465, 29 A.L.R. 281]; *McElroy* v. *United States*, 164 U.S. 76 [17 S.Ct. 31, 41 L.Ed. 355]. However, the consolidation of a number of charges is proper practice where there is a "common element" prominent in all the crimes. (*People* v. *Duane*, 21 Cal.2d 71, 74 [130 P.2d 123].) There was a common element in the two crimes of which appellant was accused. The plan for their commission was identical. In each instance he had hidden in the back room of a food market at closing time after entering and posing as a customer. His intention in entering both was to commit robbery. He used the same disguise and wore the same hat and jacket on both occasions and carried the same gun. After the robbery he tied his victims with a rope; after his burglary he was found in possession of a rope. All these elements were of substantional importance in the commission of the crimes. Under such circumstances a joinder of two distinct offenses was proper. (*In re Pearson*, 30 Cal.2d 871, 874 [186 P.2d 401].) It is not required that two crimes should have occurred on the same day or have been aimed against the same person or group. (*People* v. *Duane*, *supra*; *People* v. *Bundte*, 87 Cal.App.2d 735, 745 [197 P.2d 823].) From the evidence believed by the court the identification of appellant by the victims of his crimes as the robber was complete. (*People* v. *Ash*, 88 Cal.App.2d 819, 825 [199 P.2d 711].) Iden-

tity can be established by the mere belief of the witnesses if they satisfy the trier of facts. (*Ibid,* p. 826.) In *People* v. *Gryszkiewicz,* 88 Cal.App.2d 230, 233 [198 P.2d 585], a prosecution for grand theft and attempted grand theft, while conceding that under Penal Code, section 954, the trial court might by the exercise of discretion join two counts for trial, the accused contended that it was an abuse of discretion in his case to deny him a severance because the trial court knew from the record of the preliminary examination offered in support of his motion that the evidence of defendant's identity· on the grand theft charge would be much weaker than that available on the attempted grand theft charge. He maintained that his chances of acquittal of grand theft would be much better if not tried with the companion count. The court denied the appeal on the strength of *People* v. *Kelly,* 203 Cal. 128 [263 P. 226], which supports the construction of section 954, *supra,* in conferring discretion on the trial court.

▮ Moreover, in presenting his motion for a severance appellant stated merely that the charges were unrelated and that he would be prejudiced without stating reasons why his rights would be prejudiced. ▮ In such circumstances the appellate court is required to consider the facts presented to the trial court and not subsequent revelations. (*People* v. *Eudy,* 12 Cal.2d 41 [82 P.2d 359].) Furthermore, had the two .crimes been tried separately, evidence of the burglary would have established a common scheme, plan and. method to rob, an identical disguise, eyebrows, ears, size, voice, and means of gaining entrance to the depository of the money. (*People* v. *Ross,* [1]98 Cal.App.2d 805, 809 [221 P.2d 280].)

Judgments affirmed.

McComb, J., and Wilson, J., concurred.