Gary STEVENS, Appellant,

v.

STATE of Alaska, Appellee.

No. 3134.

Supreme Court of Alaska.

July 7, 1978.

Barbara J. Miracle and Mark Weaver, Asst. Public Defenders, Brian C. Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

Gary Stevens was indicted on two counts of rape.[1] The first count charged Stevens with the rape of V.H. on February 4, 1976; the second count charged him with the rape of T.F. on February 23, 1976. After trial by jury, Stevens was found guilty on both counts. Subsequent to the jury's return of the guilty verdicts, Stevens pleaded nolo contendere to a third count of the rape of M.L. and was sentenced by the superior court to serve concurrent terms of fifteen years on each count. In this appeal, Stevens has raised in part, the following issues:

1. Whether the superior court erred in denying Stevens' motion for mistrial based on the failure of the state to disclose police reports which contained information used on cross-examination by the state to impeach appellant's alibi witnesses;

2. Whether the superior court erred in denying appellant's motion for severance.[2]

---

1. AS 11.15.120 provides in relevant part:

   A person who (1) has carnal knowledge of another person, forcibly and against the will of the other person ·. . . is guilty of rape.

2. Stevens has also specified as error the following:

1. Whether the superior court erred in denying appellant's post trial motion for an evidentiary hearing, vacation of the judgment and commitments, and a new trial based on the appearance of improper influence on the court;

2. Whether the court erred in sentencing appellant to three concurrent fifteen year

We shall first address the issue involving the failure to disclose the police reports.

By pretrial order, the superior court required the prosecution to:

disclose to defense counsel and make available for inspection and copying all information and material within his possession and control which he is required to disclose by subsections (b)(1); (b)(2) and (b)(3) of Rule 16, Rules of Criminal Procedure. Such materials coming into his possession or control after that date shall be disclosed promptly without the necessity of a request or further order of this court.

Pursuant to the terms of this order, Stevens was entitled to discovery of all police reports containing statements of persons with relevant information.[3] In addition, Stevens filed a subsequent motion for discovery, requesting "continuing discovery of all information subject to discovery under pertinent portions of Criminal Rule 16(b)(1), with respect to any information or tangible evidence in control or coming into control of the prosecuting attorney which were not contained in the initial police reports transmitted to defendant's counsel."[4]

The police report in question contained summaries of interviews with two of Stevens' alibi witnesses as to the alleged February 23, 1976 rape of T.F. In that report Diane Stevens, wife of appellant, was reported stating that she was driving Gary Stevens' car on February 23, 1976, and that she went to Marilyn McFadden's house and stayed there until around 12:00 p. m. An interview with Marilyn McFadden contained in the same police report also stated that Diane Stevens left the McFadden home at approximately 12:00 p. m.[5] Both of these witnesses testified at appellant's trial that Ms. Stevens left the McFadden

sentences without the benefit of a psychiatric evaluation.

3. Alaska Rule of Criminal Procedure 16(b)(1), (2) and (3) provide:

(b) Disclosure to the Accused.

(1) Information Within Possession or Control of Prosecuting Attorney. Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;

(ii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by the accused;

(iii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by a co-defendant;

(iv) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons;

(v) Any books, papers, documents, photographs or tangible objects, which the prosecuting attorney intends to use in the hearing or trial which were obtained from or belong to the accused; and

(vi) Any record of prior criminal convictions of the defendant and of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial.

(2) Information Provided by Informant— Electronic Surveillance. The prosecuting attorney shall inform defense counsel:

(i) of any relevant material or information relating to the guilt or innocence of the defendant which has been provided by an informant, and

(ii) of any electronic surveillance, including wiretapping, of

(aa) conversations to which the accused or his attorney was a party,

(bb) the premises of the accused or his attorney.

(3) Information Tending to Negate Guilt or Reduce Punishment. The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor.

4. Also included in this motion for discovery were requests for medical records, photographs and hair samples. These latter motions were granted at pre-trial hearings which were held on May 11 and June 9, 1976. Defense counsel indicated at the May 11, 1976 hearing that he believed he had received complete police reports and on this point was not contradicted by the prosecutor.

5. The times were important to Gary Stevens' defense because the February 23, 1976 rape was alleged to have occurred between 12 and 12:30 p. m.

residence in appellant's car at approximately 12:30 p. m. On cross-examination of each witness, the prosecutor used the undisclosed police report to establish that in prior police interviews both Ms. Stevens and Ms. McFadden had set 12:00 p. m. as the departure time.[6] Moreover, on rebuttal the prosecution called the police officer who conducted the earlier interviews with Ms. Stevens and Ms. McFadden. The police officer testified that Diane Stevens had previously stated that she left the McFaddens' residence at 12:00 p. m.[7]

In *Des Jardins v. State,* 551 P.2d 181 (Alaska 1976), we were required to assess the prejudicial impact of the prosecution's failure to disclose the names of four witnesses for the state until just prior to trial.[8] While we held that it was error under the particular circumstances for the superior court to have denied Des Jardins' motion for a continuance,[9] we concluded that the error was harmless under the test articulated in *Love v. State,* 457 P.2d 622 (Alaska 1969).[10] Nevertheless, we took the occasion to issue an admonition against further violations of Alaska's procedural rules pertaining to criminal discovery. More particularly, we stated:

> On the other hand, the lack of prejudice here was purely fortuitous. In future cases we will continue to scrutinize prosecutorial conduct in this area, and will not hesitate to reverse where it appears that the defendant has been prejudiced by such action.[11]

Rule 16, Rules of Criminal Procedure encompasses broad purposes, namely:

> In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and adversary system.[12]

By virtue of the explicit provisions of Rule 16(b)(1)(i), and the superior court's order pertaining to the prosecution's duty

---

**6.** The undisclosed police report also indicated that Diane Stevens stated her husband was babysitting three children on February 23, 1976, while she was away from home with the car. At trial, Ms. Stevens testified on direct examination that appellant stayed with three children on February 23, 1976. However, appellant testified on cross-examination that there had been only two children. Since appellant testified prior to his wife during the trial, a contradiction in their versions of the events was established without resort to cross-examination of Ms. Stevens.

**7.** It was not until this point in the trial that defense counsel discovered that he had not previously had access to the police report which contained this information. He immediately moved for a mistrial and an order to strike all portions of the testimony dealing with information contained in the undisclosed police report. Both motions were denied.

**8.** Since Des Jardins had not asserted that he had been denied a constitutionally fair trial, the standard of *Love v. State,* 457 P.2d 622, 630 (Alaska 1969), was applied. Under *Love,* reversal based on non-constitutional errors turns on "what the error might have meant to the jury." Under the *Love* test, it is not enough that the totality of the evidence supports the result, but in addition the reviewing court must determine whether the error would have sub-

stantially influenced the decision of a jury of "reasonable laymen."

**9.** Failure by the prosecution to comply with discovery ordinarily entitles the defense to a continuance but not to a dismissal of the action. *Scharver v. State,* 561 P.2d 300 (Alaska 1977). In *Scharver,* the defendant did not receive discoverable police reports until six days before taking of testimony began. The appellee in the present case would have this court rule that Stevens' sole remedy was similarly to request a continuance and attempt to rehabilitate his impeached witnesses. However, the present appeal is distinguishable from the *Scharver* case since defense counsel did not learn of the undisclosed police report until after it had been used at trial to the detriment of his client. Thus, a continuance would not have protected Stevens sufficiently in the present case.

**10.** Defense counsel in *Des Jardins v. State,* 551 P.2d 181 (Alaska 1976), was able to vigorously cross-examine the state witnesses in question, and successfully impeached parts of their testimony.

**11.** *Des Jardins v. State,* 551 P.2d 181, 186 (Alaska 1976).

**12.** Alaska Rules of Criminal Procedure 16(a).

to make discovery,[13] we hold that in the case at bar the government was under a duty to disclose to the defense the subject police report.[14] The prosecution's unexplained failure to disclose the police report clearly contravened the policies which underlie Rule 16.

■ Having concluded that the prosecution failed to comply with both Criminal Rule 16 and the superior court's discovery order, we must further determine whether the error was prejudicial or harmless under the *Love* test. Unlike the factual situation in *Des Jardins v. State,* 551 P.2d 181 (Alaska 1976), Stevens' counsel did not learn of the impeaching evidence until after it had been used to attack the testimony of two of his alibi witnesses to the T.F. rape charge, and thus a continuance would have been to no avail. Further, the use by the prosecution of this evidence deprived Stevens' counsel of the opportunity of reviewing the statements of Ms. Stevens and Ms. McFadden, and to assess if they were made under duress, whether a guilty plea should therefore have been entered, as well as determin-

ing whether these alibi witnesses would nevertheless be called to testify at trial of the T.F. rape charge.[15]

On the other hand, the prosecution presented strong cases against Stevens as to both rape charges. Study of the record reveals that both victims had more than adequate opportunity to observe their assailant, had no difficulty in subsequently identifying Stevens, and that medical testimony confirmed the fact that the victims had experienced sexual intercourse within 24 to 48 hours prior to the time their respective medical examinations had been conducted.[16] The defense did not contest the fact that the victims had been sexually assaulted, rather, the defense asserted that Gary Stevens was not the assailant. In support of this position, Stevens presented alibi testimony going to both counts in question.

In light of the foregoing, we are led to the conclusion that the prosecution's failure to comply with Criminal Rule 16 and the superior court's discovery order, was under the *Love* standard, harmless error as to the

---

13. *See* note 3, *supra,* for the text of Rule 16(b)(1)(i). Earlier we alluded to the superior court's entry of pretrial orders which specifically required the prosecution to comply with the disclosure requirements of subsection (b)(1).

14. At trial the state conceded that the subject police report should have been furnished to Stevens' counsel during the pretrial stages of the case.

15. *See People v. Fields,* 12 Ill.App.3d 608, 298 N.E.2d 743, 746 (Ill.App.1973), *rev'd on other grounds,* 59 Ill.2d 516, 322 N.E.2d 33 (Ill.1974). There defendant had been denied discovery of statements the prosecutor had taken from his alibi witnesses. The prosecution argued that the statements were in conflict and it would be giving the defendant too much of an advantage to be able to review the statements and then decide which alibi witness to call. However, the state appeals court reversed the conviction and stated:

It is vital for the defense to know whether or not the written statement given to the State is the same as the oral or written statement given to the defense attorney. If it is different, the defense attorney will want to ascertain which version is true. If he decides that the statement given to the State is false, he will want to inquire whether the state-

ment was given under duress. He can only do this if he has access to the statement. On the other hand, he may ascertain that the alibi witness is not telling the truth and decide to recommend that his client permit him to negotiate a plea with the State. It may also appear that several alibi witnesses gave conflicting statements. In that event the defense attorney must have access to the statements in order to decide which of the conflicting statements is true in order for him to properly defend against the State's accusations. In the event that the statements are not furnished, counsel may well decide not to use the alibi witness at all even though he believes his client to be innocent, for experience may have taught him that discrepancies between written statements and oral testimony even from truthful witnesses are commonplace.

298 N.E.2d at 746. The Illinois court went on to note that "[o]ne of the dangers of an alibi defense is that if the alibi is not believed, many jurors might believe that defendant is guilty, even if nothing in the state's evidence would lead them to the conclusion on the theory that a false alibi is indicative of guilt".

16. V.H.'s testimony was partly corroborated by one military witness.

V.H. rape charge.[17] We reach this conclusion based on the strength of the government's case and the fact that the undisclosed impeaching evidence related only to the events which occurred on February 23, 1976, the date of the alleged rape of T.F.

Resolution of the harmless error issue as it relates to the T.F. rape charge presents a much more difficult problem. The two primary alibi witnesses offered by the defense as to the T.F. rape charge testified that Ms. Stevens did not leave the McFadden residence until 12:30 p. m. and that during this time, Gary Stevens was purportedly at home babysitting. The time Ms. Stevens left the McFadden residence with Gary's vehicle is of particular significance, since T.F. testified that while hitchhiking she was picked up by Gary Stevens at approximately noon.[18] According to the state's undisclosed impeaching evidence, Ms. Stevens had told a police investigator that she left the McFadden residence at 12:00 p. m. and that Ms. McFadden had stated to the same investigator that Ms. Stevens had left the McFadden residence at 12:00 p. m. on the day in question. Ms. Stevens denied telling the state's investigator that she left the McFadden residence at noon. Ms. McFadden, when confronted with the assertion that she had told the investigator that Ms. Stevens left at 12:00 p. m. responded that she thought that she had made the statement, but offered an explanation for the apparent inconsistency.[19] A third alibi witness, Mr. McFadden, testified that Ms. Stevens left his residence at about 12:30 p. m.[20] In final arguments to the jury, the prosecution referred to the inconsistencies in Ms. Stevens' and Ms. McFadden's testimony which were disclosed through the questioned undisclosed police report, as well as through the testimony of the investigating officer to whom the inconsistent statements were purportedly given. Of necessity, these purported inconsistencies were also alluded to by defense counsel in his final argument to the jury.

■ Analysis of the impact of the undisclosed police report in the context of the entire trial record has led us to the conclusion that a new trial must be had as to Gary Stevens' conviction on the T.F. rape charge. We cannot fairly say that the disputed impeaching evidence of Ms. Stevens and Ms. McFadden concerning the time the former left the latter's residence on February 23, 1976, did not appreciably affect the jury's verdict as to the T.F. rape count. *Love v. State,* 457 P.2d 622, 632 (Alaska 1969). Thus, we conclude that the admission of the questioned evidence was prejudicial error.

One other issue remains to be addressed in detail. Earlier we noted that Stevens had specified as error the superior court's failure to grant a severance, under Rule 14, Rules of Criminal Procedure,[21] of the two rape counts. Review of the facts indicates

17. Although we have determined that the *Love* non-constitutional test is apposite here, assuming arguendo, that constitutional error flowed from the prosecution's failure to make discovery, we would hold such error harmless beyond a reasonable doubt. *Chapman v. United States,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See State v. Hannagan,* 559 P.2d 1059, 1065 (Alaska 1977); *Evans v. State,* 550 P.2d 830, 840 (Alaska 1976). ·

18. T.F. testified that she was hitchhiking in the Mountain View Drive area of Anchorage, and in particular stated:

Q. About what time did you get the ride?
A. About 12:00, around near 12:00.
Q. Did you have a watch?
A. No, I didn't.
Q. Sometime around 12:00?
A. Yes.

19. When asked when she first remembered that Ms. Stevens was at her home watching the Mr. Rogers television program from 12:00 to 12:30, Ms. McFadden replied:

My husband and I talked about it sometime in April. I think it was . . . sometime in May . . . We [were] talking about it and . . . we remembered talking to her about a certain show that was on that day. This Mr. Rogers, I remember there was a magic act or something in it that day and we remembered her being there when we were watching it.

20. Mr. McFadden's testimony was not directly impeached.

21. Alaska Rule of Criminal Procedure 14 provides:

*Relief From Prejudicial Joinder.* If it appears that a defendant or the state is preju-

that the two counts of rape were joined for trial as offenses "of the same or similar character" pursuant to Rule 8(a), Rules of Criminal Procedure.[22] Initially, Stevens argues that the potential for prejudice is such that in cases where joinder is based on similarity of offenses that the accused should have a right of severance. Secondly, even if there is no inherent right to severance, Stevens argues that he was prejudiced by the joinder of similar offenses in which the evidence of one could not be admissible in a separate trial of the other.

In jurisdictions where joinder of similar offenses is allowed, the courts have held unless the crimes charged are so distinct as to fail to meet the criteria for similar offenses,[23] the decision to sever is within the discretion of the trial court.[24] "Thus, in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration."[25] Once similar offenses have been properly joined for trial, it is incumbent upon the defendant to show

diced by a joinder of offenses or of defendants is an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the state to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce at the trial.

**22.** Alaska Rule of Criminal Procedure 8(a) provides:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies, misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

As to the facts the record shows the following: The first incident occurred on the morning of February 4, 1976, apparently between the hours of 9 and 11 a. m. V.H. was walking home from work when Stevens offered her a ride. According to V.H., he was driving a car which was brown on the bottom with a white top. Stevens drove V.H. toward her home at Fort Richardson but passed the first gate and stopped instead at the second gate where he threatened her with a folding knife. They drove on and V.H. was forced to remove all of her clothing and engage in oral sex. Stevens then drove V.H. to a secluded lake and committed sodomy upon her. They drove back toward Anchorage afterward but stopped again and according to V.H., Stevens again raped her by forcing her to crouch on her knees on the car seat while he entered her from the rear. V.H. was dropped off at her home near Fort Richardson.

The second rape occurred on February 23, 1976, between 12:00 and 12:20 p. m. T.F. was hitchhiking when appellant stopped and offered her a ride. T.F. described the car he was driving as brownish with a white top. They

drove around for a time and kept turning around in dead end streets. Appellant finally stopped the car and pulled out a folding knife, forcing T.F. to engage in oral sex. Appellant then raped T.F. while she lay on her side and stomach on the car seat and he entered her from the rear.

**23.** See McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896).

**24.** E. g., Bayless v. United States, 381 F.2d 67 (9th Cir. 1967); People v. Duane, 21 Cal.2d 71, 130 P.2d 123 (1942); State v. Coleman, 206 Kan. 344, 480 P.2d 78 (1971); State v. Anderson, 202 Kan. 52, 446 P.2d 844 (1968); State v. Hacker, 197 Kan. 712, 421 P.2d 40 (1966), cert. denied, 386 U.S. 967, 87 S.Ct. 1050, 18 L.Ed.2d 119 (1967); State v. Brown, 181 Kan. 375, 312 P.2d 832 (1957); State v. McDonald, 74 Wash.2d 563, 445 P.2d 635 (1968).

**25.** Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 88 (1964).

The balancing which the trial judge must perform in ruling on a motion for severance is a complex process. McCormick states:

Such a balancing calls for a large measure of individual judgment about the relative gravity of imponderables. Accordingly, some opinions stress the element of discretion. It should be recognized, however, that this is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. Discretion implies not only leeway but responsibility. A decision clearly

specific facts and circumstances establishing how he will be prejudiced by a joint trial.[26] To meet this burden, a defendant must show more than a tendency of a joint trial to create an image in the jurors' minds of his criminal disposition.[27] Moreover, it is not enough that a defendant shows that the evidence against him on one of the charges is much weaker than in the other offense.[28] Further, since the decision to sever is left to the discretion of the trial court, failure to sever will not result in the reversal of a conviction unless it amounts to a clear abuse of discretion on the part of the trial court.[29]

Stevens' primary argument concerning prejudice is that the facts surrounding the separate incidents were not so closely related that in separate trials evidence relating to the uncharged offense could be admissible to prove the identity of the perpetrator of the charged offense. As a consequence, he asserts that he was prejudiced by the joint trial. In ruling on claims of prejudice from joint trials of similar offenses, many courts have justified their decisions in part by reasoning that had the offenses in question been tried separately, the facts of the count not charged could nevertheless have been introduced to show one or more elements of the charged offense.[30] Any general rule of admissibility of "other crimes" evidence must recognize the differing risks of prejudice to a defendant from the introduction of various kinds of evidence. As stated in *Hill v. United States,* 135 U.S.App. D.C. 233, 235, 418 F.2d 449, 451 n.5 (1968), "what we confront is a zone of prejudice . . . ."[31]

wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion.
C. McCormick, *Handbook of the Law of Evidence* § 190, at 453–54 (2d ed. 1972) (footnotes omitted).

**26.** *Cleveland v. State,* 538 P.2d 1006 (Alaska 1975).

**27.** *Richards v. State,* 451 P.2d 359 (Alaska 1969).

**28.** *People v. Brock,* 66 Cal.2d 645, 58 Cal.Rptr. 321, 426 P.2d 889 (1967); *People v. Kramer,* 103 Cal.App.2d 35, 229 P.2d 53 (1951); *People v. Gryszkiewicz,* 88 Cal.App.2d 230, 198 P.2d 585 (Cal.App.1948). In *Kramer* and *Gryszkiewicz,* there was an additional factor, however. If the counts had been tried separately in these cases, the evidence of the other offense would have been admissible to show a common scheme or design.

**29.** *E. g., United States ex rel. Evans v. Follette,* 364 F.2d 305 (2d Cir. 1966), *cert. denied,* 385 U.S. 1016, 87 S.Ct. 733, 17 L.Ed.2d 552 (1967); *State v. Williams,* 108 Ariz. 382, 499 P.2d 97 (1972); *People v. Martinez,* 549 P.2d 758 (Colo. 1976); *State v. Matias,* 550 P.2d 900 (Hawaii 1976); *State v. Gander,* 220 Kan. 88, 551 P.2d 797 (Kan.1976); *State v. Adams,* 218 Kan. 495, 545 P.2d 1134 (Kan.1976); *State v. Rondeau,* 89 N.M. 408, 553 P.2d 688 (N.M.1976).

**30.** Consistently in such cases, a defendant's claim of prejudice has been held to be unfounded. *E. g., State v. Dale,* 113 Ariz. 212, 550 P.2d 83 (1976); *People v. Martinez,* 549 P.2d 758 (Colo.1976); *State v. Rondeau,* 553 P.2d 688 (N.M.1976); *State v. Kinsey,* 7 Wash.App. 773, 502 P.2d 470 (Wash.App.1972). This court has not previously decided the conditions under which separate offenses are sufficiently similar for this "other offenses" rule of evidence to apply. *See* Proposed Alaska Rule of Evidence 404(b). In *Demmert v. State,* 565 P.2d 155, 157 (Alaska 1977), we reaffirmed the rule that while evidence of prior misconduct is ordinarily inadmissible against an accused, when it is relevant to prove some other material fact it will not be excluded. In *Demmert,* evidence of a similar lewd and lascivious act committed seven years previously was held to be admissible to show specific intent on the part of the defendant in the subsequent offense.

**31.** In this respect, commentators have attached independent significance to the fact that the element to be shown through evidence of prior misconduct is identity. Wigmore states:

Identity may involve the designation of a person as the perpetrator of a crime wholly unrelated to the subject matter of litigation. Here a formidable question may arise as to whether or not the highly inflammatory and prejudicial effect of such testimony may far outweigh its legitimate use of identification. Especially is this true where the identity of the defendant in a criminal action is in issue. It is submitted that the trial Judge should determine this question of evaluation by taking into account all of the attendant facts and circumstances—not as a matter of discretion but as one of law.

2 J. Wigmore, *Evidence in Trials at Common Law* § 413, at 179 of 1977 Supp. (3d ed. 1940, 1977 Supp.). C. McCormick, *Handbook of the Law of Evidence* § 190, at 452 (2d ed. 1972), acknowledges that "courts are stricter in ap-

■ In light of the foregoing considerations, we have concluded that Stevens has not shown that the superior court abused its discretion by virtue of its failure to sever the trial of the offense in question. As was observed at the outset of the discussion of this issue, it is not contested that the crimes were sufficiently similar for joinder. Concerning severance, we think it sufficient to observe that in our view had the counts been tried separately, the facts pertaining to the count not charged could have been introduced for the purpose of showing the common identity of the assailant.[32] *People v. Thornton,* 11 Cal.3d 738, 114 Cal.Rptr. 467, 523 P.2d 267, 280–91 (1974), *cert. denied,* 420 U.S. 924, 96 S.Ct. 1118, 43 L.Ed.2d 393 (1975); *State v. Sterling,* 537 P.2d 578 (Or.App.1975);[33] *State v. Sterling,* 15 Or. App. 443, 516 P.2d 87 (1973).[34] We further note that our study of the record has convinced us that on the whole the evidence as to the separate counts was presented in such a manner that Stevens was not confounded in his defense against the charges.

■ Despite the foregoing, we think it appropriate to note our agreement with the criticism which has been directed against a procedural rule which permits the joinder of offenses of the same or similar character.[35] We think that in general such joinders are to be avoided and that in those instances where the prosecution has joined offenses of the same or similar character the court, on motion by the accused, should grant a severance of such changes.[36]

Gary Stevens' conviction of the crime of rape of V.H. is affirmed. Gary Stevens' conviction of the crime of rape of T.F. is reversed and the matter remanded for a new trial.[37]

---

plying their standards of relevancy when the ultimate purpose of the state is to prove identity, or the doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind." (footnote omitted).

**32.** As the state correctly points out in its brief:
Both victims were young native women. Both events occurred during the daytime hours between 9:00 and 12:30 p. m. Both testified they were walking when Stevens picked them up. Both were threatened with a folding knife. Both described the car that Stevens was driving as being brown on the bottom and white on top. Both women were forced to engage in oral intercourse, prior to the actual rape. Both were forced to assume a position in the front seat whereby their heads were pointed toward the passenger door and both were entered from behind. The rapes occurred less than three weeks apart. . . .

**33.** In *State v. Sterling,* 537 P.2d at 579, the court said in part:
The similarities of this attacker's general plan of operation, taken singly, are not uncommon to the rapist. But when, as here, where identity is the major question (and it was accentuated by the alibi defense), similarities in the appearance of the attacker, plus time and place, the kinds of victims and the other methods of perpetrating the crimes mentioned above become quite relevant to a jury in deciding whether the identification made by the victims is accurate.

**34.** *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85, 91–92 (1964), reversed a conviction on grounds of prejudice but nevertheless noted:
[E]ven where the evidence would not have been admissible in separate trials, if, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial.
While appellant attempts to point out instances in which the prosecutor in this case failed to keep the evidence of the two offenses separate, a careful reading of the record indicates that this was not a trial in which mingling of the evidence on the two separate charges occurred to any appreciable extent. .

**35.** Commentators generally concur in the view that joint trial of similar offenses are inherently prejudicial to a defendant and should be avoided. Note, *Joint and Single Trial Under Rules 8 and 14 of the Federal Rules of Criminal Procedure,* 74 Yale L.J. 553, 560 (1965); Moore's Federal Practice ¶ 8.02[1] n.3, at 8–3 (2d ed. 1976).

**36.** ABA Standards Relating to Joinder and Severance, § 1.1(a) and § 2.2(a), at 28–32 (1968).

**37.** Since Stevens' conviction of the rape of T.F. is reversed and vacated, upon remand appellant should be resentenced as to the two remaining rape convictions. Prior to any resentencing proceedings, a psychiatric evaluation of

CONNOR, Justice, with whom MATTHEWS, Justice, joins, dissenting in part, concurring in part.

I must respectfully dissent.

I do not agree that the prosecution's failure to comply with Criminal Rule 16 was harmless error as to the rape charge involving the victim V. H. The impeachment of Stevens' witnesses as to his alibi on the T. F. charge might well be taken by the jury to demonstrate that Stevens was a liar and therefore to be disbelieved as to the V. H. charge. Further, Mrs. Stevens was the primary alibi witness on the V. H. charge. Her impeachment with the withheld statement concerning the T. F. case obviously could have affected the jury's perception of her testimony as to the V. H. charge. In my view the government's failure to turn over the relevant material tainted both verdicts or at least would substantially affect those verdicts. Under *Love v. State,* 457 P.2d 622, 632 (Alaska 1969), I cannot conclude that this was harmless error.

With the balance of the majority opinion I agree.

BURKE, Justice, dissenting in part.

In light of all of the evidence, I believe that any error flowing from the prosecution's failure to comply with Criminal Rule 16 was harmless as to both counts of the indictment. Thus, I dissent from the holding that Stevens' conviction for the rape of T. F. must be reversed.

Stevens should be undertaken and made part of a supplemental pre-sentence report. Further, before conducting any resentencing proceedings, this court will appoint an appropriate member of the judiciary to determine whether Judge Buckalew's refusal to disqualify himself for cause from sentencing Stevens was proper under AS 22.20.020. The "cause" asserted here is that Judge Buckalew knew both the victim, M.L., as well as the victim's family, and thus should have disqualified himself. As mentioned earlier, Stevens pleaded nolo contendere to the rape of M.L., after he had been convicted of the V.H. and T.F. rape charges.