**Raymond J. MONTES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6403.**

Court of Appeals of Alaska.

Sept. 30, 1983.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and MADSEN, Superior Court Judge.*

## OPINION

BRYNER, Chief Judge.

Raymond Montes was convicted by a jury of five counts of theft in the second degree in violation of AS 11.46.130(a)(1). Each of these counts was based upon Montes's alleged theft of airplanes or airplane engines during the period from October 1, 1980, to November 3, 1980. On appeal, Montes contends that the trial court erred in granting the state's motion to consolidate the counts for purposes of trial. He also argues that the trial court committed reversible error by admitting prior recorded testimony of Daniel Cox, who was also indicted for theft of two of the same airplanes. Finally, Montes contends that his sentence is excessive.

In September, 1980, Montes was released from the Eagle River Correctional Center, where he served time for writing checks without sufficient funds. While in prison, Montes worked on maintenance crews that were allowed to go outside the prison to work and pick up supplies. Montes had an avid interest in airplanes, which was shared by some of the correctional officers who supervised him. While still an inmate, Montes was taken by correctional officers on several occasions to the Birchwood airstrip to examine airplanes.

Montes was released from jail on September 19, 1980. In early October of 1980, he set up a business partnership with an airplane mechanic, Larry Call. Montes hoped that this business, called L & R Aircraft, would eventually purchase wrecked airplanes that Montes and Call would refurbish and then sell. Montes had met Call through Daniel Cox, a correctional officer.

Sometime in the fall of 1980, after a severe windstorm, Call and Cox moved a Cessna 182 aircraft from the Birchwood airstrip. Montes claimed to be the owner of this airplane. Actually, Montes did not own the airplane and had not contacted its owners. As a result of this incident, Montes was charged on November 19, 1980, with one count of second-degree theft.

On December 12, 1980, Montes was indicted on four additional counts of second-degree theft. Count I involved an incident in which Montes again led Larry Call to believe that Montes was the owner of an airplane, a 1947 Navion. Call helped Montes move the Navion to a vacant lot near Call's house in Eagle River. This airplane did not belong to Montes, and Montes unsuccessfully tried to sell its engine to another correctional officer from the Eagle River Correctional Center. Count II dealt with the theft of another airplane engine. While at the Eagle River Correctional Center, Montes became acquainted with a correctional officer who owned a 1946 Luscumbe aircraft. The officer asked Montes to perform the annual engine inspection required by F.A.A. rules. Montes sold the engine, but told the officer that it had been taken to an engine mechanic because the

---

* Madsen, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

inspection revealed that repairs were necessary.

Count III charged the theft of yet another airplane engine. Montes agreed to locate a Taylorcraft to sell to Michael Smith, a friend of Call. Montes located a Taylorcraft that was for sale, and Smith agreed to pay its owner $5,000. As part of the transaction, Montes was to receive $1,000 in cash as well as the airplane's engine. In return, Montes was to repair the airplane and locate a larger engine for it. However, the original engine in the airplane was actually the size that Smith desired. Montes had misrepresented the size of the engine to Smith so that he (Montes) could sell it. Montes did in fact sell the engine and never found a replacement for Smith.

A similar theft was charged in Count IV. During November of 1980, Montes informed a prospective purchaser that he could arrange the sale of a wind-damaged AA–18 supercub for $4,000. Montes claimed that he would take the plane's engine to a friend employed at Sea Airmotive, who would be able to determine whether the engine could be repaired. Instead, Montes took the engine and sold it to an aircraft mechanic for $300.

On December 23, 1980, the state made a written motion to consolidate the initial charge against Montes with the four-count indictment for purposes of trial. Montes filed an opposition to the state's motion to consolidate, and moved to sever counts I through IV of the indictment. The state's motion to consolidate all five counts was granted by Superior Court Judge Ralph Moody. Trial commenced on February 18, 1981; on February 26, 1981, Montes was found guilty of all five counts. Judge Seaborn J. Buckalew, Jr., sentenced Montes to a total term of seven years' imprisonment. Montes then brought this appeal.

## CONSOLIDATION OF THE OFFENSES

Montes contends that the trial court erred when it granted the state's motion to consolidate the original charge against him with the subsequent four-count indictment; he further contends that it was error to deny his motion to sever. He initially argues that joinder of all five counts in a single indictment was inherently prejudicial.

In *Nell v. State,* 642 P.2d 1361 (Alaska App.1982), the trial court's denial of a motion to sever a two-count indictment was attacked on appeal. We stated that, generally, analysis of joinder problems would encompass two separate inquiries:

> First, under Rule 8(a), it must be asked whether the two offenses charged are so related as to make joinder proper. Second, under Rule 14, it must be determined whether, given the propriety of joinder under Rule 8(a), joinder of the offenses for trial would unduly prejudice the defendant.

*Id.* at 1363. Turning to the first area of inquiry, we must ask whether the requirements of Alaska Rule of Criminal Procedure 8(a) have been satisfied. This rule provides:

> *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies, misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Montes does not deny that the charged offenses are similar in character because each offense relates to the theft of private aircraft parts. However, he contends that the similarities between these offenses is limited to their common subject matter; he argues that there are no underlying factual or causal connections among the alleged illegal acts to support a finding that the charges constituted a consistent scheme or a related chain of events.

Despite Montes's assertion to the contrary, it is well established that joinder of offenses against a single defendant is proper under Criminal Rule 8(a) if any one of the three tests set forth therein is satisfied. 1 C. Wright, *Federal Practice and*

*Procedure: Criminal* § 143, at 481–87 (2d ed. 1982). *See Stevens v. State,* 582 P.2d 621, 627 (Alaska 1978). In the present case, each larceny count involved thefts of aircraft or aircraft parts accomplished through Montes's role as partner in L & R Aircraft. Since the offenses are of "the same or similar character," it is apparent that joinder was in accordance with Criminal Rule 8(a). In addition, Montes openly and purposefully used an ongoing business to fraudulently obtain aircraft or aircraft parts. Furthermore, the temporal sequence in this case was reasonably close; Montes committed all five offenses within a span of five weeks. Finally, trial testimony of Larry Call suggested that Montes purposefully withheld from Call information concerning the illegal activities in order to insure the success of the scheme. We conclude that the record supports the trial court's finding of a common scheme or plan within the meaning of Criminal Rule 8(a).[1] We must proceed to the second prong of the *Nell* analysis.

The second area of inquiry under *Nell* involves determination of whether the joinder of the offenses for trial would unduly prejudice the defendant pursuant to Alaska Rule of Criminal Procedure 14, which states in pertinent part:

> *Relief From Prejudicial Joinder.* If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

Montes asserts that the denial of his motion to sever prejudiced him by forcing him to forego his right to testify on one or more counts because of the effect that his testimony might have on the remaining charges. Montes's argument is directly controlled by *Cleveland v. State,* 538 P.2d 1006 (Alaska 1974). In *Cleveland,* the supreme court held that a motion for severance must be evaluated under the standards formulated in *Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir.1968): "[I]n order for a defendant to be granted a severance, he must make a 'convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.' " *Cleveland v. State,* 538 P.2d at 1008. The supreme court later rejected a similar argument that severance should be granted any time that a defendant wants to testify with regard to one, but not all, of two or more joined counts. *Huff v. State,* 598 P.2d 928, 933 (Alaska 1979).

Montes's claim must fail when considered in light of the *Cleveland* criteria. Montes neglected to indicate the nature of the testimony he wished to give. Thus, the first prong of the *Cleveland* requirement, that the accused make a convincing showing that he has important testimony to give concerning one count, has not been met. Nor has Montes demonstrated a strong need to refrain from testifying on the other counts. As we stated in *Nell v. State,* 642 P.2d at 1365, this prong of the *Cleveland* analysis requires a specific showing of prejudice; a generalized fifth amendment argument, standing alone, will not suffice.[2]

1. The existence of a common scheme or plan answers Montes's separate contention that joinder violated his rights under Alaska Rule of Evidence 404(b). Montes argues that consolidation of all counts for trial created an inference of bad character or propensity on his part, thereby violating Evidence Rule 404(b), which provides:

    *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

    However, it is well established that proof of a common scheme or plan constitutes an exception to the general rule stated in Evidence Rule 404(b). *See Fields v. State,* 629 P.2d 46, 49–50 (Alaska 1981); *Nell v. State,* 642 P.2d 1361, 1364 (Alaska App.1982); E. Cleary, McCormick on Evidence § 190, at 448–49 (2d ed. 1972).

2. Montes argues that he could have made a more explicit showing of how he would be prejudiced only by revealing inculpatory information, and he suggests that the trial court could have avoided the dangers of self-incrimi-

In short, Montes has not demonstrated either that joinder was initially improper in violation of Criminal Rule 8(a) or that joinder unduly prejudiced him in violation of Criminal Rule 14. Nevertheless, Montes contends that reversal is mandated by *Stevens v. State,* 582 P.2d 621 (Alaska 1978). In that case, the court expressed concern about joinder of offenses based upon nothing more than the similarity of the offenses.

> Despite the foregoing, we think it appropriate to note our agreement with the criticism which has been directed against a procedural rule which permits the joinder of offenses of the same or similar character. We think that in general such joinders are to be avoided and that in those instances where the prosecution has joined offenses of the same or similar character the court, on motion by the accused, should grant a severance of such changes [sic].

*Id.* at 629 (footnotes omitted). Montes argues that *Stevens* and other authorities, *e.g., ABA Standards Relating to Joinder and Severance* § 1.1(a), § 2.2(a), at 28–32 (1968), compel a finding that severance should be routinely granted whenever an accused moves to sever similar offenses. We expressly rejected this interpretation of *Stevens* in *Nix v. State,* 653 P.2d 1093, 1095 n. 3 (Alaska App.1982). On appeal, denial of a motion for severance under Criminal Rule 14 will be reversed only when the court has abused its discretion and a showing of prejudice to the defendant has been made. *Hawley v. State,* 614 P.2d 1349, 1360 (Alaska 1980); *Catlett v. State,* 585 P.2d 553, 556 (Alaska 1978). We conclude that Judge Buckalew did not abuse his discretion in denying Montes's motion to sever.

## ADMISSION OF DANIEL COX'S PRIOR RECORDED TESTIMONY

The next point on appeal involves the court's admission of the pre-recorded preliminary hearing testimony of Daniel Cox. Montes contends that the prosecution knew this testimony was perjured, but nonetheless chose to present it at trial. He further contends that admission of this testimony violated his right to due process and thus requires reversal of his conviction.

Cox's testimony at the preliminary hearing concerned Montes's theft of two aircraft and Cox's relationship with Montes. On January 30, 1982, several weeks after testifying at Montes's preliminary hearing, Cox was indicted on four counts of theft; two of these counts arose from the thefts in which Montes was involved. On August 14, 1982, Cox was found guilty by a jury of those two counts.

At Montes's trial, the prosecutor moved for admission of Cox's recorded preliminary hearing testimony. He argued that Cox's testimony was vital.

> Mr. Cox is probably the most central character and the state—as this court is aware—has indicted Mr. Cox for complicity as an accomplice on two of the thefts, the 182 and the Navion airplane.... So his testimony is quite important to the state.

The prosecution argued that Cox's assertion of his fifth amendment privilege made him unavailable within the meaning of Criminal Rule 15(e)(1), so that the preliminary hearing testimony was admissible under Evidence Rule 804(b)(1).

Montes vigorously objected to the admission of the prior testimony. He argued that Cox knew he was under investigation when he testified at the preliminary hearing, and thus had an obvious motive to lie concerning the role he and Montes played in the thefts. Montes also assailed Cox's reputation for truthfulness, as evidenced by the opinion of several of Montes's acquaintances.

In response, the prosecutor conceded that some of Cox's testimony was self-serving

---

nation by permitting Montes to reveal this information *in camera.*

An *in camera* showing is not precluded by *Cleveland,* and it may well serve to prevent the possibility of self-incrimination in this situa-

tion. However, it was incumbent upon Montes as the moving party to make such a request; the court was under no obligation to suggest an *in camera* showing *sua sponte* in this case.

and that Cox had untruthfully denied knowledge of the thefts. However, he contended that much of the testimony had been verified as truthful. The prosecutor stated that he would inform the jury that Cox had been indicted for two of the thefts, and thus had a motive to lie. He further agreed to permit the defense to introduce portions of a sixty-nine page statement Cox gave to police two days after Montes's preliminary hearing; these were inconsistent with his testimony at the preliminary hearing. Ultimately, the trial court concluded that Cox's preliminary hearing testimony was admissible.

Montes unsuccessfully objected to the playing of Cox's preliminary hearing testimony. The court informed the jury that Cox had testified under oath at the preliminary hearing and was unavailable for trial. In addition, the prosecutor followed through with his promise to disclose Cox's pending trial on two of the counts.

Montes now argues that admission of this testimony denied him due process of law and was thus reversible error. Furthermore, he asks us to find that the prosecutor violated the Alaska Code of Professional Responsibility, DR 7–102(A)(4), which states, "[i]n his presentation of a client, the lawyer shall not ... [k]nowingly use perjured testimony or false evidence."

We conclude that this argument is without merit. Montes relies on Supreme Court cases holding that due process is violated when perjured testimony is used to obtain a conviction. See *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). See also *Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957) (conviction obtained by presentation of testimony known to the prosecuting authorities to be perjured; witness's testimony was seriously prejudicial to defendant); *Hysler v. Florida,* 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932 (1942) (prosecution knowingly used false testimony extorted from a witness by violence and torture); *Pyle v. Kansas,* 317 U.S.

213, 63 S.Ct. 177, 37 L.Ed. 214 (1942) (presentation of testimony known to state authorities to be perjured; deliberate suppression of testimony favorable to the defendant).

■ The state's use of Cox's testimony is obviously different from the situations presented in *Napue* and similar cases. Here, the prosecutor presented Cox's criminal liability to the jury, and Montes had an opportunity to inform the jury of false statements in the recorded testimony. Furthermore, Montes has never established that the portions of Cox's statements concerning Montes's involvement were false. Any false exculpatory statements made by Cox with respect to his own involvement did not prejudice Montes and were not presented under any pretense of truthfulness. The state did not attempt to hide Cox's involvement in the thefts, and in fact stipulated to admission of his indictments. Given these facts, we hold that the prosecution did not violate Montes's due process rights by presenting Cox's testimony.

## EXCESSIVENESS OF SENTENCE

Montes was convicted of five counts of second-degree theft. Montes had previously been convicted of a felony and was thus subject to a presumptive term of two years. AS 12.55.125(c)(1). Judge Buckalew sentenced Montes to concurrent two year terms on Counts I, II and III, and imposed a consecutive three-year term on Count IV. On the remaining count, Montes was sentenced to two years to run consecutively to the sentence imposed on Count IV.[3] Thus, Montes's aggregate sentence for five counts of theft in the second degree was seven years.

■ Montes attacks this sentence on two grounds. First, he contends that the criminal conduct that formed the basis for the five-count conviction was one general transaction, so that all sentences should have been concurrent. Montes argues that

---

**3.** The state alleged and the trial court concluded that two aggravating factors, AS 12.55.-155(c)(12) and (17), had been proven. The

court expressly found that AS 12.55.155(c)(12) pertained only to Count IV.

it was inconsistent to permit joinder under a common scheme theory, only to treat the offenses as separate and distinct crimes for sentencing purposes. We disagree.

As the state notes, joinder and sentencing involve separate considerations. Joinder focuses on the need for judicial economy and fairness to the accused; in contrast, the *Chaney* criteria focus on the basic considerations and underlying goals of sentencing. *See State v. Chaney,* 477 P.2d 441 (Alaska 1970). The sentence in this case can be justified solely on the basis that Montes was convicted of separate offenses committed at different times and involving different victims. *See Hunter v. State,* 590 P.2d 888, 902–03 (Alaska 1979); *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977); *Lacquement v. State,* 644 P.2d 856, 859 (Alaska App.1982).

■ Montes also argues that Judge Buckalew failed to make specific findings justifying imposition of consecutive sentences, as required by our decision in *Lacquement v. State,* 644 P.2d at 862. We disagree. A review of Judge Buckalew's sentencing remarks reveals that he gave due consideration to Montes's deep-seated psychological problems, his previous criminal record, his distorted perceptions of reality and the need for counselling, the seriousness of his offenses, and the goal of reaffirmation of societal norms. Viewed in context, Judge Buckalew's remarks indicate that the total sentence was fashioned with a belief that confinement of Montes for more than the two-year presumptive term and for more than the maximum five-year term was necessary for Montes's rehabilitation and for protection of the public. *See Neal v. State,* 628 P.2d 19 (Alaska 1981).

■ Finally, Montes contends that his aggregate sentence of seven years was excessive. As indicated in our discussion of Montes's contention that each sentence should have been concurrent, we are unable to find that the aggregate sentence of seven years was clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

Montes's conviction and sentence are AFFIRMED.